**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| CHARLES HESS, MARTY HIGGINS, ROBERT "GLEN" MCCORMICK, RONALD PAPA, FRANK SHERA, and AL TORNQUIST, | ) ) ) ) ) | Civil Action No. 3:16-cv-00208 |
| | ) | |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) ) | |
| | ) | |
| BIOMET, INC. and ZIMMER BIOMET HOLDINGS, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.  SUMMARY OF RESPONSE.................................................................................1

II. ARGUMENT AND AUTHORITIES.........................................................................1

    A.  Motion to Dismiss Standard.............................................................................1

    B.  Count I of Plaintiffs' Complaint – Breach of Contract
        ("Underpayment Claim")...................................................................................2

        1.  The Distributorship Agreement Applies to "All" Biomet
            Products, Not Just "Reconstructive Products."............................2

        2.  The Allegations in the Complaint that Defendants Breached
            Their Contracts by Paying Commissions on a Subset of
            Biomet Products, as Opposed to All Biomet Products, Must
            Be Taken as True ..........................................................................4

        3.  Defendants' Motion Impermissibly Attacks a Statement
            Made in a <u>Settlement Letter</u> as Opposed to the Allegations
            in <u>Plaintiffs' Complaint</u>...............................................................4

    C.  Count II of Plaintiffs' Complaint for Breach of Contract ("Re-
        Branding Claim") and Count III of Plaintiffs' Complaint for
        Breach of Contract ("Merger Claim") ..............................................................7

        1.  Overview of Counts II and III as Addressed in the Motion.........7

        2.  None of Defendants' Four Arguments Comes Close to
            Satisfying their Burden Under Rule 12(b)(6) ..............................8

    D.  Defendants' Duty of Good Faith and Fair Dealing Under Indiana
        Law .................................................................................................................12

        1.  Plaintiffs Have Not Asserted a Breach of the Duty of Good
            Faith as a Separate Cause of Action ..........................................12

        2.  Contrary to Defendants' Argument, Indiana Courts Do Not
            Limit the Duty of Good Faith to UCC Contracts and
            Insurance Contracts....................................................................13

        3.  A Duty of Good Faith May Apply if the Contracts Are
            Deemed Ambiguous....................................................................14

E.      Count IV – Indiana Statutory Deception Claim....................................................14

      1.      Plaintiffs Have Pleaded Facts that Are More Than
          Sufficient to State a Claim that is Plausible on its Face ...........................14

      2.      Defendants Mischaracterize Plaintiffs' Statutory Deception
          Claim; the Deceptive Act is Not the Underpayment of
          Commissions, But Rather Defendants' False and
          Misleading Commission Statements........................................................15

      3.      Contrary to Defendants' Motion, Statutory Deception
          Claims Can Co-exist With Breach of Contract Claims as
          Numerous Indiana Cases Have Held .......................................................17

      4.      Plaintiffs Have Pleaded a "Pecuniary Loss" Sufficient to
          State a Claim for Recovery under The Act ...............................................20

      5.      Plaintiffs Have Pleaded their Statutory Deception Claim
          with Particularity, Identifying the "Who, What, When, and
          Where" With Respect to Defendants' Deceptive
          Commission Statements.........................................................................21

F.      Count V – *De Facto* Merger/Mere Continuation/Alter
      Ego/Piercing the Corporate Veil Claim ..............................................................22

G.      Count VI – Declaratory Judgment Claim ..........................................................25

III.     CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.I. Credit Corp. v. Legion Ins. Co.*,
   265 F.3d 630 (7th Cir. 2001) ............................................................................20

*All-Tech Telecom, Inc. v. Amway Corp.*,
   174 F.3d 862 (7th Cir. 1999) ....................................................................18, 20

*Allison v. Union Hosp., Inc.*,
   883 N.E.2d 113 (Ind. Ct. App. 2008)..............................................................14

*Amaya v. Brater*,
   981 N.E.2d 1235 (Ind. Ct. App. 2013), *aff'd*, 993 N.E.2d 1235 (Ind. 2013)....................12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................2

*Binns v. Ocwen Loan Servicing, LLC*,
   2015 U.S. Dist. LEXIS 132743 (S.D. Ind. September 30, 2015) ............18, 20

*Binns v. Ocwen Loan Servicing*,
   LLC, 2015 U.S. Dist. LEXIS 134620 (S.D. Ind. April 1, 2015) .....................18

*BKCAP, LLC v. CAPTEC Franchise Trust*
   *2000-1*, 572 F.3d 353 (7th Cir. 2009) ............................................................14

*Bules v. Marshall County*,
   920 N.E.2d 247 (Ind. 2010) ..............................................................................6

*Cooper Indus., LLC v. City of South Bend*,
   899 N.E.2d 1274 (Ind. 2009) ..........................................................................23

*Croft v. Inlight Risk Management, Inc.*,
   No. 01C1766, 2002 U.S. Dist. LEXIS 16998 (N.D. Ill. Sept. 9, 2002)..................24

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
   373 F.Supp.2d 829 (S.D. Ind. 2005) ..............................................................20

*Don Webster Co. v. Indiana W. Express, Inc.*,
   186 F. Supp. 2d 958 (S.D. Ind. 2002) ............................................................18

*Dugdale, Inc. v. Alcatel-Lucent USA, Inc.*,
No. 1:09-CV-0960-JMS-TAB, 2011 U.S. Dist. LEXIS 63678 (S.D. Ind. June
7, 2011) .....................................................................................................................18, 20

*Dunlap v. Switchboard Apparatus, Inc.*,
No. 1:12-CV-0020-TWP-DKL, 2012 U.S. Dist. LEXIS 67606 (S.D. Ind. May
15, 2012) .............................................................................................................................20

*Epperly v. Johnson*,
734 N.E.2d 1066 (Ind. Ct. App. 2000)........................................................................19, 20

*Erickson v. Pardus*,
551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)........................................................2

*Foshee v. Daoust Const. Co.*,
185 F.2d 23 (7th Cir. 1950) .............................................................................................6, 7

*French-Tex Cleaners, Inc. v. Cafaro Co.*,
893 N.E.2d 1156 (Ind. Ct. App. 2008)..............................................................................19

*Gregg Allen Constr. Co. v. Estelle*,
798 N.E.2d 171 (Ind. 2003) ...............................................................................................20

*Gunashekar v. Grose*,
915 N.E.2d 953 (Ind. 2009) ...............................................................................................17

*International Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.*,
356 F.3d 731 (7th Cir. 2004) .............................................................................................24

*Johnson v. Rivera*,
272 F.3d 519 (7th Cir. 2001) ...............................................................................................2

*JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*,
977 N.E.2d 354 (Ind. Ct. App. 2012)................................................................................19

*Koehlinger v. State Lottery Commission of Indiana*,
933 N.E.2d 534 (Ind. Ct. App. 2010)................................................................................19

*Koger v. T&C, Inc.*,
No. 55A01-1305-CT-187, 2014 Ind. App. Unpub. LEXIS 373 at *23-24 (Ind.
Ct. App. March 18, 2014 ...................................................................................................21

*Larson v. Karagan*,
979 N.E.2d 655 (Ind App. Ct. 2012)..............................................................................17, 21

*Longhi v. Mazzoni*,
914 N.E.2d 834 (Ind. Cit. App. 2009) .............................................................................17, 21

*Miller Brewing Co. v. Best Beers of Bloomington*,
Inc., 608 N.E.2d 975, 981 (Ind. 1993) ..................................................................18

*Moses v. Innoprise Software*,
No. C-12-05271-EDL, 2014 U.S. Dist. LEXIS 22407 (N.D. Cal. Feb. 21,
2014) ..........................................................................................................................24

*Noble Roman's, Inc. v. Puzzles Fun Dome, Inc.*,
No. 1:14-cv-01026-TWP-DKL, 2015 U.S. Dist. LEXIS 32265 (S.D. Ind.
March 16, 2015)..........................................................................................................18

*Old Nat. Bank v. Kelly*,
31 N.E.3d 522 (Ind. Ct. App. 2015)..........................................................................13

*Quimby v. Caliber Home Loans*,
2015 U.S. Dist. LEXIS 77549(S.D. Ind. June 16, 2015) ..........................................18

*Quimby v. Caliber Home Loans*,
No. 1:14-cv-01335, 2015 U.S. Dist. LEXIS 78452
(S.D. Ind. April 22, 2015) ..........................................................................................18

*Reed v. Reid*,
980 N.E.2d 277 (Ind. 2010) ......................................................................................24

*Robinson v. Leonard-Dent*,
No. 3:12-cv-417-PPS, 2013 U.S. Dist. LEXIS 150068
(N.D. Ind. Oct. 18, 2013) ..................................................................................12, 13

*Rodriguez v. Tech Credit Corp.*,
824 N.E.2d 442 (Ind. Ct. App. 2005)........................................................................23

*Schrenger v. Caesars Ind.*,
825 N.E.2d 879 (Ind. Ct. App. 2005)....................................................................17, 21

*Sheridan Health Care Ctr. v. Centennial Healthcare Corp.*,
No. IP 01-0186, 2001 U.S. Dist. LEXIS 24832
(S.D. Ind. June 19, 2001) (unpublished) ..............................................................20, 21

*SieMatic Mobelwerke GmbH & Co. KG v. SieMatic Corp.*,
643 F.Supp.2d 675 (E.D. Pa. 2009) ..........................................................................24

*SMC Corp. v. PeopleSoft U.S.A., Inc.*,
1:00-cv-1095-LJM-VSS, 2004 U.S. Dist. LEXIS 22811
(S.D. Ind. Oct. 12, 2004)............................................................................................19

*State Grp. Indus. (USA) Ltd. v. Murphy & Associates Indus. Servs., Inc.*,
878 N.E.2d 475, 480-81 (Ind. Ct. App. 2007) ........................................................18

*Strawbridge v. Sugar Mountain Resort, Inc.*,
    243 F.Supp.2d 472 (W.D.N.C. 2003) ...................................................................24

*T-3 Martinsville, LLC v. U.S. Holdings, LLC*,
    911 N.E.2d 100 (Ind. Ct. App. 2010) ...............................................................19

*Tobin v. Ruman*,
    819 N.E.2d 78, 89 (Ind. Ct. App. 2004) ...........................................................19

*Tracy v. Minne*,
    No. 3:15-cv-212, 2016 U.S. Dist. LEXIS 8115
    (N.D. Ind. January 15, 2016) ..............................................................................18

*U.S. ARG*
    *Corp.*, No. 3:10-CV-00311-PPS, 2014 U.S. Dist. LEXIS 2297
    (N.D. Ind. Jan. 7, 2014) .............................................................................24, 25

*U.S. v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*,
    470 F.Supp.2d 823 (N.D. Ill. 2007) ...................................................................24

*White v. Indiana Realty Associates II*,
    555 N.E.2d 454 (Ind. 1990) ........................................................................17, 21

*Zimmer US Inc. v. Mire*,
    No. 3:16-cv-008, 2016 U.S. Dist. LEXIS 69712 at *16-19
    (N.D. Ind. May 27, 2016) .....................................................................................1

*Zimmer US Inc. v. Mire*,
    No. 3:16-cv-008, 2016 U.S. Dist. LEXIS 69712
    (N.D. Ind. May 27, 2016) .....................................................................................9

*Zollman v. Geneva Leasing Associates, Inc.*,
    780 N.E.2d 387 (Ind. Ct. App. 2002) ...............................................................14

## STATUTES

Ind. Code § 35-43-5-3(a)(2) ..................................................................................14

Ind. Code § 23-1-40-6(a)(3) ...........................................................................10, 23

Ind. Code § 35-43 ...................................................................................................14

Indiana Crime Victim's Relief Act (Ind. Code § 34-24-3-1) .................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ........................................................................................................................2

Fed. R. Civ. P. 9 ............................................................................................................................2

Fed. R. Civ. P. 11 ..........................................................................................................................5

Fed. R. Ev. 408 ..........................................................................................................................5, 6

## I.     SUMMARY OF RESPONSE

Defendants' Motion to Dismiss ("Motion") suffers from three fatal defects. First, the Motion violates the central feature of a Rule 12(b)(6) motion: the facts alleged by a plaintiff in the Complaint must be taken as true. Here, Defendants pay lip service to this proposition and purport to "tak[e] the facts alleged by Plaintiffs as true" (Mot. at 4), but then repeatedly either ignore or misstate the very facts alleged in the Complaint that defeat the Motion.

Second, a Rule 12(b)(6) motion is to be directed against the factual allegations in the Complaint; yet, a primary focus of Defendants' Motion is an inadmissible settlement letter, not the Complaint. It is a strawman argument by which Defendants seek to deflect attention from the relevant document for purposes of a 12(b)(6) motion (the Complaint) and towards a wholly irrelevant one (the settlement letter). Moreover, as explained below, Defendants' out-of-context use of the settlement letter – written eight months before the Complaint was filed and before Plaintiffs had completed their due diligence into Defendants' misconduct – is grossly misleading.

Third, Defendants' Motion finds no support under Indiana law. For certain issues, Defendants do not even make the pretense of citing any law. For other issues, Defendants substitute lawyer argument for legal authorities. When Defendants do cite legal authorities, more often than not, the authorities either are irrelevant to the issue being addressed or do not accurately state applicable law.

Defendants have failed to meet the very high burden imposed under Rule 12(b)(6) and their Motion must be denied.

## II.     ARGUMENT AND AUTHORITIES

### A.     Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) is used to "test the law of the claim, not the factual support." *Zimmer US Inc. v. Mire*, No. 3:16-cv-008, 2016 U.S. Dist. LEXIS 69712 at

1

*16-19 (N.D. Ind. May 27, 2016). Accordingly, to overcome a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Stated differently, a complaint will survive a Rule 12(b)(6) challenge so long as it contains factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

A court considering a Rule 12(b)(6) motion must inquire whether the complaint satisfies the federal "notice-pleading" standard established by Fed. R. Civ. P. 8(a). Such notice-pleading does not require specific facts; instead, "the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (ellipsis in original).[1]

Finally, and critically in this case, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor when considering a Rule 12(b)(6) motion. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).

**B.    Count I of Plaintiffs' Complaint – Breach of Contract ("Underpayment Claim")**

**1.    The Distributorship Agreement Applies to "All" Biomet Products, Not Just "Reconstructive Products."**

The crux of the dispute regarding Count One is whether Plaintiffs are entitled to commissions on sales of "all" Biomet products in their former territories as the Complaint alleges or only "reconstructive products" as the Motion asserts. As set forth in the Complaint,

---

[1] An exception to the general rule applies to causes of action subject to the heightened pleading standards of Fed. R. Civ. P. 9. Only Plaintiffs' cause of action for statutory deception is subject to this heightened standard, *see infra* at 21-22.

2

section 1 of the Distributorship Agreements[2] broadly entitles Plaintiffs to commissions from "the distribution and sale of *Biomet products*" without limitation. *See* Exs. A-D, §1.[3] Section 2 of the Distributorship Agreements establishes an initial commission structure ranging from 15% to 30% for calendar year 1982 for eight separate product categories and then provides:

> New items added to the *standard product line* will be placed in one of the existing categories, if possible, and will carry the appropriate schedule. Should items be added to the Biomet *standard product line* that are not covered by an existing category, the commission level to be paid through calendar year 1982, will not be less than 25%.

*Id.*, §2(b). They further state that "[p]ayment of commissions provided herein shall be paid to distributor on *all items* shipped into the territory(s) …." *Id.*, §2(d).

Section 9 of the Distributorship Agreements establishes a "long-term commission program" also referred to as a "retirement income program," in which Plaintiffs are paid commissions on "net sales" from their former territories, and "net sales" are broadly defined as "*gross sales made within the subject distributorship* at the time this program is initiated and actually collected by Biomet less returns and allowances and less adjustments for nonpayment of invoices as provided herein." *Id.* at §§9(d), 9(e).

Based upon this contractual language, the allegations in the Complaint that Plaintiffs are entitled to be paid commission on all Biomet products without question "states a claim to relief that is plausible on its face," and Defendants' Motion must therefore be denied. Defendants simply ignore the contractual language that dooms their Motion.

---

[2] As noted in their Complaint, Plaintiffs did not attach the Distributorship Agreements or Termination Agreements (the "Agreements") as exhibits because they contain confidentiality provisions, and it would have been improper to publicly file them absent Defendants' consent. Complaint, ¶16, n.1. In their Motion, Defendants make much of the fact that the Agreements were not attached. Thus Plaintiffs then reached out to Defendants, and the parties have entered into a stipulation (attached as Exhibit K) in which both sides waived confidentiality to allow the Agreements to be publicly filed, and the Agreements are attached as Exhibits A through J to the Declaration of Gary Cruciani filed contemporaneously with this Response.

[3] Unless otherwise noted, (i) all emphases are inserted by counsel, (ii) all exhibits are to the Cruciani Declaration, and (iii) all defined terms use the same definitions as in the Complaint.

3

2.      **The Allegations in the Complaint that Defendants Breached Their Contracts by Paying Commissions on a Subset of Biomet Products, as Opposed to All Biomet Products, Must Be Taken as True.**

Turning from the language in the Distributorship Agreements themselves to the allegations in the Complaint, Plaintiffs allege the following:

- the Distributorship Agreements "expressly establish a retirement-income program and provide for payment of a lifetime commission on all Biomet products sold in the relevant territories," and the Termination Agreements provide for the continuation of this retirement-income program. Complaint, ¶¶91, 92.

- "Biomet failed to pay the Legacy Distributors a commission on all Biomet product sales in their former territories. Instead, Biomet paid the Legacy Distributors a commission on only a portion of Biomet product sales in their former territories in violation of the Agreements." *Id.*, ¶94.

- "Defendants fraudulently concealed that they have systematically underpaid the Legacy Distributors by providing statements purporting to give a full accounting of the commissions owed, while omitting information necessary to establish that no commission was being paid on various Biomet products." *Id.*, ¶98.

- "Accordingly, the Legacy Distributors did not discover, and in the exercise of ordinary diligence could not have discovered, Defendants' breaches of the Agreements until they began their buyout discussions with Biomet in 2015 that resulted in the Legacy Distributors retaining counsel, which led to the investigation uncovering Defendants' concealment." *Id.*, ¶100.

Simply put, Plaintiffs claim that under the Agreements they are entitled to payment on "*all*" Biomet products, but only have been paid on a "*portion*" of Biomet products and that Defendants hid these underpayments through fraudulent commission statements. These factual allegations must be taken as true for present purposes. At page 8 of their Motion, Defendants give a passing nod to these factual allegations in the Complaint, but then proceed to ignore them and make no effort to explain why they fail to state a claim.

3.      **Defendants' Motion Impermissibly Attacks a Statement Made in a <u>Settlement Letter</u> as Opposed to the Allegations in <u>Plaintiffs' Complaint</u>.**

Defendants do not attack the adequacy of the pleadings in Count One of the Complaint –

which is the only relevant issue at the dismissal stage – but rather collaterally and improperly attack the Complaint as being *inconsistent with statements in a settlement demand letter* that was written by Plaintiffs' counsel more than eight months prior to the filing of the Complaint and before Plaintiffs had discovered the history of Defendants' underpayments that form the basis for Count One. Defendants' argument is not merely wrong, it is groundless.[4]

<u>First</u>, the July 20, 2015 letter was a settlement offer and is *per se* inadmissible to prove liability. At the top of page one of the letter it reads: "**<u>OFFER OF COMPROMISE AND SETTLEMENT PURSUANT TO RULE 408 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>.**" *See* Ex. 1 attached to Motion (emphasis and capitalization in original). Rule 408 expressly provides that evidence regarding "a statement made during compromise negotiations about the claim . . . is *not admissible* – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. Defendants fail to mention in their Motion that the letter was an inadmissible settlement offer.[5]

<u>Second</u>, far from the settlement letter being a "fatal admission[]," it is irrelevant.[6] In fact, the Indiana Supreme Court has even recognized that during settlement discussions "[a] party

---

[4] *See* Fed. R. Civ. P. 11 (By presenting a written motion to the Court, the attorney certifies, among other things, that the motion is "not being presented for any improper purpose" and the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.")

[5] Defendants appear to suggest that the July 2015 settlement letter is fair game for all purposes because it was referenced in the Complaint. *See* Mot. at 8. That argument is flawed. The Complaint refers to the settlement discussions, including the July 2015 settlement letter, that preceded the filing of the lawsuit. *See* Complaint, ¶¶50-57. These settlement discussions were included in the Complaint for the sole (and proper) purpose of establishing that "a current, justiciable dispute exists between the Legacy Distributors, Biomet, and Zimmer Biomet regarding their respective rights and obligations under the Agreements," *id.*, ¶57, as an actual controversy is a requirement to assert a claim for declaratory relief, *see* Complaint, ¶¶140-143.

[6] As the "fatal admission[]" and "fatal[] acknowledge[ment]" comments demonstrate (*see* Mot. at 9-10), Defendants equate counsel's settlement statement as equivalent to a binding judicial admission in response to a Rule 36 request for admission. In fact, it is as far removed from a "fatal admission" as possible; being nothing more than a statement: (i) by counsel (not even Plaintiffs themselves); (ii) made as part of inadmissible settlement discussions; (iii) that was based upon facts that counsel and Plaintiffs believed to be accurate at the time of the letter; and (iv) that subsequent investigation over the next eight months proved to be mistaken.

5

may concede some points in an attempt to reach a compromise without waiving them if no agreement can be reached." *Bules v. Marshall County*, 920 N.E.2d 247, 251 (Ind. 2010).

Third, as noted above, Defendants knowingly take the "admission" made in the settlement letter completely out of context, *supra* at 5. At the time of the July 2015 settlement letter, neither Plaintiffs nor their recently retained counsel had discovered that Biomet had been systematically underpaying Plaintiffs their retirement commissions from the outset. Plaintiffs' recent discovery as a result of retaining counsel and its ensuing investigation is specifically and extensively pleaded. *See* Complaint, ¶11. The undisputed facts are that *more than eight months* passed between the July 2015 settlement letter and the filing of the Complaint in April 2016. It was during this time period that Plaintiffs and their counsel continued to investigate their claims and discovered the historical underpayments that form the basis of Count One.

Fourth, Defendants' argument lacks any legal support. Defendants have failed to cite a single case in which a court has dismissed a breach of contract claim on the unprecedented theory that Defendants advance here: that a statement in an inadmissible Rule 408 settlement letter trumps the actual terms of the contract and requires dismissal.

Fifth, none of Defendants' cited cases are remotely on point, and none deal with statements made as part of settlement discussions. For example, Defendants cite *Foshee v. Daoust Const. Co*., 185 F.2d 23, 25 (7th Cir. 1950) for the proposition that "a plaintiff cannot 'plead around' damaging documents." Mot. at 7. The bizarre insinuation is that Plaintiffs are trying to "plead around" the July 2015 settlement letter – as if the letter is the document upon which Plaintiffs' claims are based as opposed to the contracts themselves. Defendants then put *Foshee* in context by (correctly) stating that in *Foshee* "the plaintiff alleged breach of contract but disregarded numerous *contractual provisions* that completely undermined the plaintiffs'

6

claims." *Id*. at 8. Thus, *Foshee* stands for the unremarkable proposition that a plaintiff cannot avoid dismissal by isolating a term from a contract and ignoring the other contractual provisions that undercut the claim. It has nothing to do with statements in a settlement letter.

Equally specious to Defendants' reliance on the July 2015 settlement letter is their reliance on a May 2015 settlement-related email from a former Biomet distributor *who is not a party in this lawsuit* that requests Biomet "to continue to honor their obligations to pay override commissions on any/all reconstructive products sold in our respective territories." *See* Ex. 1, C attached to Motion. Defendants argue this email "demonstrates conclusively that Biomet had not breached its obligations." Mot. at 9. This argument suffers from each of the flaws as the July 2015 settlement letter, plus one more. The May 2015 email was not written by one of the "Plaintiffs" as Defendants incorrectly assert (*see id.* at 9); rather, it was written by a former distributor named Al Plows, who is *not* a party to this lawsuit.

**C.     Count II of Plaintiffs' Complaint for Breach of Contract ("Re-Branding Claim") and Count III of Plaintiffs' Complaint for Breach of Contract ("Merger Claim")**

**1.     Overview of Counts II and III as Addressed in the Motion.**

Counts Two and Three of the Complaint are both for breach of contract, but are based upon different factual and legal grounds. Count Two arises from Defendants' "brand manipulation" in improperly re-labeling "Biomet" products as "Zimmer" or "Zimmer Biomet" products and artificially depriving Plaintiffs of commissions due on legacy Biomet products. Complaint, ¶¶21, 79-86, 106-115. Count Three is based upon the merger between Biomet and Zimmer to form Zimmer Biomet in June 2015 and the legal obligations that Defendants – who publicly hold themselves out as a single, "combined" company – owe to Plaintiffs for commissions from product sales from the new company. *Id.*, ¶¶19, 22, 58-86,116-125.

Notwithstanding the material factual distinctions between Counts Two and Three, Defendants conflate these two counts and make no effort to address them separately. *See* Mot. at

12-14. Rather than addressing the factual allegations, which must be presumed true, Defendants effectively ignore them. *Id.* Defendants' legal analysis is similarly lacking. Their sole legal authorities are a string cite for the basic proposition that courts are to give effect to the parties' mutual intent at the time the contract is written. *Id*. at 13.

### 2.   None of Defendants' Four Arguments Comes Close to Satisfying their Burden Under Rule 12(b)(6).

Defendants make three unavailing arguments why Counts Two and Three should be dismissed as to all Plaintiffs and assert a fourth argument specific to Plaintiff Frank Shera. Each argument is addressed below, and none warrants dismissal.

First, Defendants urge that they do not have fair notice as to which agreements Plaintiffs contend apply because Plaintiffs did not attach the contracts to their Complaint. Mot. at 12.[7] As noted *supra* at n.2, this argument is moot as the Agreements are now before the Court. *See* Exs. A-J.

Second, Defendants' main argument is that the parties "could not possibly have intended" for the retirement-income program to apply to "non-Biomet products" such as "Zimmer" or "Zimmer Biomet" products. Mot. at 13-14. This is mere, unsupported lawyer argument. Moreover, an argument focused on "intent" is self-defeating because it is fact-intensive and inappropriate for resolution via a 12(b)(6) motion. *See Zimmer*, 2016 U.S. Dist. LEXIS 69712 at *16-19.

In *Zimmer*, Judge Lee issued his decision denying the defendant's 12(b)(6) motion the day after Defendants filed their Motion in this case. There, Zimmer sued a sales representative

---

[7] Defendants' argument is disingenuous. There is no mystery which contracts are at issue. Each Plaintiff signed a Distributorship Agreement upon joining Biomet and a Termination Agreement upon retiring from Biomet. These two types of agreements are referred to as the defined term "Agreements" throughout the Complaint. *See* Complaint, ¶16. Plaintiffs are pleased to have the Agreements before the Court because (i) the actual language strongly supports Plaintiffs' claims and (ii) exposes Defendants' misstatements of what the agreements actually say (*see, e.g.* discussion regarding Mr. Shera's Termination Agreement, *infra* at 10-11).

(Mire) for breach of contract for allegedly violating his non-compete clause by taking confidential information and going to work for a competitor. The agreement defined the "Restricted Geographic Area" as "any geographic territory *assigned* to Employee during Employee's last two years of employment with [Zimmer]." *Id.* at *4. The employee, Mire, argued (and it was undisputed) that the agreement itself did not refer to the specific "restricted geographic area" that was assigned to Mire and moved to dismiss on that basis. *Id.* at *4-5. Zimmer opposed the motion by arguing the agreement did not need to define the "restricted geographic area" and it was undisputed that Mire called on accounts in Deridder, Leesville, and Alexandria, Louisiana and this constituted the territory "assigned" to Mire. *Id.*

Judge Lee identified the "real crux" of the dispute related to the undefined word "assigned" and held its meaning is "not one that can be resolved on the present record, nor does it need to be. At the end of the day, the only issue before the court is whether Zimmer's Complaint is sufficient to state a cognizable claim for breach of contract under a Rule 12(b)(6) standard of review. The answer to that question is yes." *Id.* at *16. He reiterated that "[p]erhaps [Zimmer's allegations] would not survive a motion for summary judgment, since the record would be more developed and would presumably include evidence (especially deposition testimony) of the *parties' intentions* with regard to the 'assignment' of a 'restricted geographic limitation,' but it does survive the motion to dismiss." *Id.* at *16-17. Finally, Judge Lee observed that "an assessment of evidence (like deposition testimony) to determine the *parties' intent* when they signed the agreement . . . might entail credibility determinations, which the court obviously cannot make now or at the summary judgment stage." *Id.* at *18-19.

Judge Lee's ruling in *Zimmer* should dictate the result here. The breach of contract claims in Counts Two and Three state a claim, and the 12(b)(6) motion must be denied as the Court

cannot decide as a matter of law on the pleadings what the parties "intended" when they entered into their Distributorship Agreements with Biomet more than thirty years ago.

Third, Defendants contend that "[t]here is no reasonable argument that either Plaintiffs or Biomet contemplated that, over thirty years later, Zimmer would acquire Biomet …." Mot. at 14. Defendants cite no legal authority – and there is none – that the parties must have contemplated the specific merger that occurred in this case in order for the Agreements to apply to products sold by the new company, Zimmer Biomet. There are three independent bases for Plaintiffs' claim that their retirement commissions apply to the products sold by Zimmer Biomet:

- The Termination Agreements confirm the survival of the retirement-income program and expressly state that the terms "shall be binding on Biomet, and its respective *successors and assigns*."[8]

- In their SEC filings and elsewhere discussing the June 2015 transaction, Defendants describe it as a "merger" that has resulted in a single "combined" company[9] and, under Indiana merger law, Zimmer Biomet succeeds to all the liabilities of Biomet."[10]

- In addition to Zimmer Biomet's liability by operation of law a result of the merger, Zimmer Biomet is liable to the same extent as Biomet under the equitable doctrines of *de facto* merger, mere continuation, alter ego, and piercing the corporate veil. Plaintiffs have pleaded numerous and detailed facts – all of which are presumed true and all of which Defendants' Motion ignores – to support these claims.[11]

Fourth, in footnote 5, Defendants assure the Court that regardless of the other Plaintiffs, "there is no question that Counts 2 and 3 should be dismissed at least with respect to Mr. Shera" because his Termination Agreement (i) defines "Biomet Products" as "orthopedic products offered for sale by Biomet under the Biomet trademark," and (ii) further provides that "***Products***

---

[8] *See e.g.*, Complaint, ¶35 (Termination Agreements provide that retirement-income program is "binding on Biomet, and its respective successors and assigns"); Ex. E, §§ 1 and 11; Ex. F, §§ 1 and 11; Ex. G, §§ 2 and 11; Ex. H, §1.2 and 1.12; Ex. J, §§ 1 and 9.

[9] *See* Complaint, ¶59 (Zimmer Biomet's 10-K filing with the SEC stating "[t]he *Biomet merger* will position the *combined company* as a leader in the $45 billion musculoskeletal industry.").

[10] See Indiana Code §23-1-40-6(a)(3)("When a merger takes effect … the surviving corporation has all liabilities of each corporation party to the merger").

[11] *See* Complaint, ¶¶22, 58-78, and 130-139.

*sold by Biomet's subsidiary corporations are not included within the meaning of 'Products'*
*used herein*." Mot. at 13, n.5 (emphasis is Defendants). In fact, Defendants objectively misstate
Mr. Shera's Termination Agreement.

As a threshold matter, the above-referenced provisions indisputably do ***not*** apply to the
retirement-income commissions at issue. The quoted language is found in Article II of Mr.
Shera's Termination Agreement entitled "Appointment of the Distributor to Administer a Certain
Account." *See* Ex. I, art. II. The background to Article II is that Mr. Shera informed Biomet that
he was planning to retire in late 1998 or early 1999, and Biomet asked him to stay involved in
administering a specific account that was very significant and with whom Mr. Shera had a
particularly close relationship. Article 2.1 defines that "Account" as a group of six specific
orthopedic surgeons who provided their services at Kendrick Memorial Hospital. *Id.*, § 2.1. As to
this one Account, Mr. Shera and Biomet negotiated a six-year agreement, which commenced on
April 26, 1999 and terminated on June 1, 2005. *Id.*, § 3.1 ("Under no circumstances will the term
of this contract extend beyond June 1, 2005.")

For this Account, Mr. Shera (as compared to the calculation of his retirement-income
commissions) was entitled to substantially higher commission rates – the "standard Biomet
commission rates," *see* Ex. I, § 2.3(b) – but commissions were paid on a narrower product base –
"Products" is defined as "orthopedic products offered for sale by Biomet under the Biomet
trademark," *id.*, § 2.2. However, Mr. Shera does *not* assert any claim in this lawsuit as to these
particular commissions. Instead, Mr. Shera's claim is limited to his retirement-income
commissions beginning on June 2, 2005. *See* Complaint, ¶104. As to these retirement-income
commissions, he is entitled to be paid based upon the language in the Distributorship Agreement

11

which, like all Plaintiffs, applies to all Biomet products without limitation. *See* Ex. C, §§ 1, 2(b), 2(d), 9.

For the above reasons, Defendants' argument in footnote 5 regarding Mr. Shera is demonstrably wrong. However, Defendants' reference to the definition of Biomet "Products" in section 2.2 of Mr. Shera's Termination Agreement as it relates to the single Account is important, but not in a way intended by Defendants. Section 2.2 shows that Biomet knew how to limit commissions to "orthopedic products" bearing "the Biomet trademark" when that was its intent. The absence of any language in the Distributorship Agreements that limit retirement-income commissions to "orthopedic products" or "Biomet-trademark[ed]" products is a dagger in the heart of Defendants' contract interpretation.

## D.     Defendants' Duty of Good Faith and Fair Dealing Under Indiana Law

### 1.     Plaintiffs Have Not Asserted a Breach of the Duty of Good Faith as a Separate Cause of Action.

Defendants misunderstand Plaintiffs' claim that Defendants have breached their duty of good faith and fair dealing. At paragraphs 113 and 123 of the Complaint, Plaintiffs have narrowly pleaded breach of the duty of good faith as a subset of their breach of contract claims, not as a separate cause of action sounding in tort. In other words, Plaintiffs do not assert a stand-alone cause of action for breach of the duty of good faith. Defendants' misunderstanding is evidenced by an analysis of the two cases on which they rely: (1) *Amaya v. Brater*, 981 N.E.2d 1235 (Ind. Ct. App. 2013), *aff'd*, 993 N.E.2d 1235 (Ind. 2013) and (2) *Robinson v. Leonard-Dent*, No. 3:12-cv-417-PPS, 2013 U.S. Dist. LEXIS 150068 (N.D. Ind. Oct. 18, 2013). Neither involves a party alleging breach of the duty of good faith as a subset of a claim for breach of a written contract.

In *Amaya*, the plaintiff alleged a cause of action for breach of contract and a separate cause of action for breach of the duty of good faith. 993 N.E.2d at 1236. The court noted that

12

Indiana has recognized a duty of good faith under the UCC and in insurance contracts, but that "we are unaware of, any authority for the proposition that a *separate cause of action* for breach of good faith exists here," a case in which the plaintiff sued after being dismissed from medical school for allegedly cheating on an exam. *Id*. at 1239. Unlike *Amaya*, Plaintiffs have not asserted a "separate cause of action" for breach of the duty of good faith.

In *Robinson*, the court dismissed plaintiff's complaint for "breach of implied contract" where plaintiff was not even a party to an actual contract. 2013 U.S. Dist. LEXIS 150068, at *36-37 and n.6. The court held that "[plaintiff's] claim for breach of implied contract is a claim for breach of the implied duty of good faith." *Id*. Unlike the present case, the plaintiff in *Robinson* was not a contracting party and did assert a separate cause of action for breach of the implied duty of good faith.

### 2.     Contrary to Defendants' Argument, Indiana Courts Do Not Limit the Duty of Good Faith to UCC Contracts and Insurance Contracts.

Even if Plaintiffs had pleaded breach of a duty of good faith as a separate cause of action, dismissal would not be warranted. In *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 532 (Ind. Ct. App. 2015), the court recently held that "summary judgment is inappropriate where, as here, a factfinder could infer … that the Bank breached its duty of good faith and fair dealing." It further held that "there is no absolute restriction to employment and insurance contracts" for the breach of the duty of good faith and fair dealing. *Id*. at 531. Instead, Indiana courts look to whether one party is dealing from "a superior vantage point" in determining whether such duty exists. *Id*. Here, Defendants are unquestionably dealing from a "superior vantage point" compared to Plaintiffs as Defendants have exclusive control regarding their product sales and the calculation and reporting of Defendants' retirement-income commissions from those sales.

3.      **A Duty of Good Faith May Apply if the Contracts Are Deemed Ambiguous.**

Defendants' Motion ignores a fundamental distinction under Indiana law between ambiguous and unambiguous contracts. "If the contract is ambiguous or expressly imposes such a duty on the parties, then the courts will impose such a duty [of good faith]." *See Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Defendants' Motion makes clear that the parties have very different interpretations of the Agreements, and should this Court ultimately determine that the Agreements are ambiguous, then under Indiana law the Court should impose a duty of good faith on Defendants in interpreting the Agreements. *Id.*[12] Here, Plaintiffs have stated a reasonable interpretation of the contracts and, making all reasonable inferences in favor of Plaintiffs, they have properly pleaded for breach of the duty of good faith.

E.      **Count IV – Indiana Statutory Deception Claim**

1.      **Plaintiffs Have Pleaded Facts that Are More Than Sufficient to State a Claim that is Plausible on its Face.**

The Indiana Crime Victim's Relief Act (Ind. Code § 34-24-3-1) (the "Act") provides that when a person suffers a "pecuniary loss" as the result of violation of certain Indiana statutes, that person may bring a civil action to recover up to three times actual damages, as well as costs and attorneys' fees. The Act incorporates, in pertinent part, Indiana Code § 35-43, which further provides that a person who "knowingly or intentionally makes a false or misleading written statement with intent to obtain property . . . commits deception." Ind. Code § 35-43-5-3(a)(2).

Accordingly, Plaintiffs are entitled to recover under the Act if they can show: (1) Defendants made a written statement; (2) that was false or misleading; (3) that was made

---

[12] A contract is ambiguous where "a reasonable person could find its terms susceptible to more than one interpretation." *Zollman v. Geneva Leasing Associates, Inc.*, 780 N.E.2d 387, 392 (Ind. Ct. App. 2002). As the drafting party, any such ambiguities in the Agreements will be interpreted against Biomet. *See BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 361 (7th Cir. 2009).

knowingly or intentionally; (4) that was intended to obtain property; and (5) that caused Plaintiffs to suffer a pecuniary loss. Plaintiffs have met their burden by pleading the following:

- **Written Statement:** Following Plaintiffs' retirement, Biomet (now Zimmer Biomet) sent written commission statements to Plaintiffs on a monthly or semi-monthly basis. Complaint, ¶¶ 17, 42, and 128.

- **False or Misleading:** The commission statements provided to Plaintiffs purported to be a complete accounting of the commissions owed under the Agreements; however, Defendants excluded from those statements any reference to Biomet Products for which no commissions were paid. *Id.*, ¶¶ 7, 18, 42-46, and 128.

- **Knowledge of Falsity and/or Intent to Mislead:** It was not until in or around 2015 that the written statements included fields labeled "SBU-Ortho" and "Unit-4," which is evidence that, for the prior twenty years, Defendants had knowingly and intentionally concealed the fact that no commissions were being paid to Plaintiffs on other Biomet products sold in their territories. *Id.*, ¶¶ 45, 127, 128.

- **With the Intent to Obtain Property:** "Defendants reaped millions of dollars in illicit proceeds, otherwise intended for the retirement of the Legacy Distributors, by using these commission statements in the manner they did." *Id.*, ¶128.

- **Pecuniary Loss:** "Defendants suffered pecuniary losses as a result of the deception." *Id.*, ¶129.

Given the factual allegations referenced above, Plaintiffs' deception claims (Count Four) are pleaded with sufficient detail to state a claim that is "plausible on its face" even under heightened pleadings standards. *See infra* at 21-22. Defendants do not and cannot attack these factual allegations, which are deemed true. Instead, Defendants raise a red herring legal argument, discussed below.

    **2.**    **Defendants Mischaracterize Plaintiffs' Statutory Deception Claim; the Deceptive Act is Not the <u>Underpayment of Commissions</u>, But Rather Defendants' False and Misleading <u>Commission Statements</u>.**

Defendants' primary attack on Plaintiffs' deception claim is that they "repackage" the breach of contract claims. Not so. Plaintiffs have pleaded two separate and distinct types of misconduct. The first concerns Defendants' failure to pay commissions owed pursuant to the Agreements. These facts underlie the breach of contract claims (Counts I, II, and III). The second

concerns Defendants' false and misleading written commission statements and forms the basis for the statutory deception claim (Count Four),[13] in which, Plaintiffs have pleaded:

- "Following the Legacy Distributors' retirement and commencement of the retirement-income program, Biomet provided commission statements that purported to identify the amount of money due to the Legacy Distributors. For many years, these statements were effectively a one-line summary that contained no substantive information beyond the total amount of commission to be paid." Complaint, ¶42.

- Biomet provided no supporting backup for this number. The Legacy Distributors did not know, and could not tell from the statements they were provided, that this commission payment failed to pay the Legacy Distributors for all Biomet product sales from their former territories . . ." *Id.*, ¶43.

- "In or around 2007, Biomet for the first time began providing limited backup information that identified the products that were sold upon which the commissions were calculated. However, nothing in these statements or backup information indicated that any Biomet products were being excluded for purposes of calculating the commission payments or that Biomet was not paying commissions on all Biomet products sold within the Legacy Distributors' former territories." *Id.*, ¶44.

- "The statements were designed to actively conceal these underpayments and mislead the Legacy Distributors by paying them on only a subset of Biomet products." *Id.*, ¶ 128.

- "Defendants reaped millions of dollars in illicit proceeds, otherwise intended for the retirement of the Legacy Distributors, by using these commission statements in the manner they did." *Id.*, ¶128.

The statutory deception under the Act was not simply Defendants underpaying Plaintiffs pursuant to the Agreements, but rather was issuing false and misleading written commission statements in a (successful) effort to reduce the retirement-income commissions owed to Plaintiffs. Accordingly, Defendants committed an independent "tort" separate and apart from Defendants' breach of contract, and one expressly proscribed by statute.

---

[13] Defendants' contention that "Counts I and IV are based on the same essential allegation: Plaintiffs claim Biomet paid them less than they were entitled to" (*see* Mot. at 19) is incorrect and mischaracterizes Plaintiffs' statutory deception allegations (*see* Complaint, ¶128).

**3.      Contrary to Defendants' Motion, Statutory Deception Claims Can Co-exist With Breach of Contract Claims as Numerous Indiana Cases Have Held.**

Defendants suggest that the mere existence of a contract related to the deception at issue defeats any claim under the Act. Not only have Indiana courts allowed recovery under the Act in analogous circumstances, they have often upheld the award of treble damages and/or attorney's fees notwithstanding that the injuries sustained because of the Act violation are directly related to the breach of contract allegations.

- *Gunashekar v. Grose*, 915 N.E.2d 953, 954 (Ind. 2009). Defendant entered into contract by hiring plaintiff to repair fire damage to property defendant had insured. Plaintiff completed the work, and defendant tendered a check to plaintiff but immediately stopped payment on it. Indiana Supreme Court affirmed finding of statutory deception under the Act, treble damages, and attorneys' fees.

- *White v. Indiana Realty Associates II*, 555 N.E.2d 454, 458 (Ind. 1990). Defendant/tenant breached contract by failing to pay plaintiff/landlord rent that was due under month-to-month agreement. Defendant was ordered to transfer possession to plaintiff, but filed bankruptcy and refused to vacate the premises and to pay rent for an additional four months. Indiana Supreme Court affirmed finding of criminal trespass under the Act and award of attorneys' fees.

- *Larson v. Karagan*, 979 N.E.2d 655, 660-62 (Ind. Ct. App. 2012). Plaintiff real estate agent had an oral contract with defendant real estate company to receive 75% of commissions defendant received. Defendant failed to pay commissions and court affirmed finding that failure to pay commissions constituted criminal conversion under the Act and affirmed award of treble damages.

- *Longhi v. Mazzoni*, 914 N.E.2d 834, 844-46 (Ind. Ct. App. 2009). Defendant entered into contract to build home for plaintiff and plaintiff agreed to deposit $50,000 as a down-payment. Defendant failed to build home and failed to return the down-payment. Court affirmed finding of statutory deception under the Act by a false written statement to obtain the down-payment and award of treble damages.

- *Schrenger v. Caesars Ind.*, 825 N.E.2d 879, 884 (Ind. Ct. App. 2005). Defendant entered into written agreement with plaintiff casino in which casino extended $25,000 in credit. Defendant wrote checks to plaintiff totaling $25,000 but they were returned for insufficient funds. Court affirmed finding of statutory deception based upon check deception under the Act and award of $25,000 in damages plus attorneys' fees.

17

Defendants' Motion fails to apprise the Court of a single one of the above cases where Indiana courts have held a defendant liable for *both* breach of contract and violation of the Act; rather, Defendants incorrectly suggest that no such cases exist.[14]

Indiana courts have further held that a party cannot contractually limit damages available under the Act for intentional conduct. In *State Grp. Indus. (USA) Ltd. v. Murphy & Associates Indus. Servs., Inc*., 878 N.E.2d 475, 480-81 (Ind. Ct. App. 2007) ("*State Group*"), defendant entered into a written agreement with plaintiff to provide engineering services. The trial court held that defendant breached the contract and committed statutory deception under the Act by knowingly submitting false and misleading invoices. It awarded contract damages, but refused to award additional damages or attorneys' fees because of limitation of liability language in the contract. *Id*. at 478. The appellate court held that "the Contract did not protect [defendant] from liability under the Crime Victims Statute stemming from [defendant's] intentional misrepresentations" and remanded for the trial court to determine whether to award additional damages and the amount of any damages. *Id.* at 481.

The cases that Defendants do cite are inapposite.  Many involved claims for fraud, negligence, or other causes of action unrelated to the Act and are, therefore, irrelevant to Count Four of the Complaint.[15]

---

[14] Defendants likewise fail to acknowledge that Indiana courts routinely allow the alternative pleading of claims sounding in contract and statutory deception *See, e.g.*, *Tracy v. Minne*, No. 3:15-cv-212, 2016 U.S. Dist. LEXIS 8115 at *16-21 (N.D. Ind. January 15, 2016) (denying defendant's Rule 12(b)(6) motion with respect to plaintiff's claims for deception and breach of contract (among others)). *See also Quimby v. Caliber Home Loans*, No. 1:14-cv-01335, 2015 U.S. Dist. LEXIS 78452 at *21-26 (S.D. Ind. April 22, 2015) adopted in pertinent part by *Quimby v. Caliber Home Loans*, 2015 U.S. Dist. LEXIS 77549 (S.D. Ind. June 16, 2015); *Binns v. Ocwen Loan Servicing*, LLC, 2015 U.S. Dist. LEXIS 134620 at *24-28 (S.D. Ind. April 1, 2015) adopted in pertinent part by *Binns v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 132743 (S.D. Ind. September 30, 2015).

[15] *See All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 864 (7th Cir. 1999); *Noble Roman's, Inc. v. Puzzles Fun Dome, Inc.*, No. 1:14-cv-01026-TWP-DKL, 2015 U.S. Dist. LEXIS 32265 at *9-12 (S.D. Ind. March 16, 2015); *Dugdale, Inc. v. Alcatel-Lucent USA, Inc.*, No. 1:09-CV-0960-JMS-TAB, 2011 U.S. Dist. LEXIS 63678 (S.D. Ind. June 7, 2011); *Miller Brewing Co. v. Best Beers of Bloomington*, Inc., 608 N.E.2d 975, 981 (Ind. 1993); *Don Webster Co. v. Indiana W. Express, Inc.*, 186 F. Supp. 2d 958 (S.D. Ind. 2002); *Koehlinger v. State Lottery*

Defendants cite seven cases – four summary judgment cases and three dismissal cases – that involved both breach of contract and Act claims, but all seven are distinguishable.

The four summary judgment cases are distinguishable because the summary judgment standard of review is very different than the 12(b)(6) standard. Moreover, summary judgment was granted on the Act claims in three of the cases because the Act claims were based on the *same conduct* as the breach of contract claims.[16] In the present case, by contrast, Defendants have engaged in conduct that is expressly prohibited by Indiana statute – providing false and misleading written commission statements – *that is separate and apart from the underpayments that constitute a breach of the Agreements*. In the fourth case, summary judgment was granted because plaintiff asserted criminal conversion under the Act for failure to pay a debt, which claim does not exist as a matter of law and which present Plaintiffs do not assert.[17]

Of Defendants' three cited cases where Act claims were dismissed on the pleadings, each is readily distinguishable from the present case. One case dismissed the Act claim because it was based on the same conduct as the breach claim.[18] In the present case, as discussed, the breach of contract and Act claims are based on different conduct. A second case dismissed the Act claim

---

*Commission of Indiana*, 933 N.E.2d 534 (Ind. Ct. App. 2010); *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000).

[16] *See, e.g., JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354 (Ind. Ct. App. 2012) (affirmed summary judgment where the same conduct – disbursement of certain funds to an entity other than the plaintiff – underlay both plaintiff's breach of contract claims and Act claims); *T-3 Martinsville, LLC v. U.S. Holdings, LLC,* 911 N.E.2d 100, 121 (Ind. Ct. App. 2010)(affirmed summary judgment where defendant's Act claims and contract claims were based on the same conduct – compounded late charges under the lease); *French-Tex Cleaners, Inc. v. Cafaro Co.,* 893 N.E.2d 1156, 1168 (Ind. Ct. App. 2008) (affirmed summary judgment on plaintiff's claims where an alleged overcharge by defendants formed the basis for the breach of contract and Act claims).

[17] *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (affirmed summary judgment for claim brought under the Act for criminal conversion by law firm associate for firm's failure to pay his share of retained earnings because "the failure to pay a debt . . . does not constitute criminal conversion as a matter of law.")

[18] *SMC Corp. v. PeopleSoft U.S.A., Inc.*, 1:00-cv-1095-LJM-VSS, 2004 U.S. Dist. LEXIS 22811 at *17 (S.D. Ind. Oct. 12, 2004) (plaintiff brought breach of contract and Act claims arising from unsuccessful implementation of software licensing agreement; court dismissed Act claims because they were based on the same conduct as the contract claims).

for criminal conversion because the claim did not exist as a matter of law and dismissed the Act claim for statutory deception because there was no written statement.[19] Here, Plaintiffs have not alleged criminal conversion and do base their Act claim on written statements. The third case was dismissed without prejudice based on "technical pleading defects" with leave to file an amended complaint.[20]

### 4. Plaintiffs Have Pleaded a "Pecuniary Loss" Sufficient to State a Claim for Recovery under The Act.

Defendants argue, in passing, that Plaintiffs' statutory deception claim should be dismissed because the "pecuniary loss" is the same as for breach of contract; namely, underpayment of commissions. Mot. at 20. Defendants cite two common law fraud cases – *Epperly* and *Dugdale* – but both are inapposite. Neither involved an Act claim. Instead, both involved a claim for breach of contract and actual and constructive fraud. *Epperly*, 734 N.E.2d at 1070; *Dugdale*, No. 1:09-cv-0960-JMS-TAB, 2011 U.S. Dist. LEXIS 63678 at *13, 21-22. Defendants cite no Indiana case that extends an independent injury requirement – present in fraud and negligence cases[21] – to Act claims.

In fact, in the several cases where Indiana courts have confronted the issue, they have rejected Defendants' arguments. In *Sheridan Health Care Ctr. v. Centennial Healthcare Corp.*,

---

[19] *Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-CV-0020-TWP-DKL, 2012 U.S. Dist. LEXIS 67606 at *25-27 (S.D. Ind. May 15, 2012) (plaintiff brought breach of contract and Act claims for statutory conversion arising from defendant's failure to pay for engineering work; court dismissed dismissing statutory conversion claim because "failure to pay a debt 'does not constitute conversion as a matter of law'" and court dismissed statutory deception claim for misleading written statement because "nothing was put in writing").

[20] *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F.Supp.2d 829, 851 (S.D. Ind. 2005)(Court dismissed without prejudice Act claims for failing to plead with particularity where the plaintiff "lumped all Defendants together" and failed to allege that "Defendants made any false or misleading statements to them.")

[21] Defendants cite several cases concerning the "economic loss" doctrine (although Defendants do not expressly use that term), which doctrine imposes certain limits on tort damages where the parties have a contractual relationship. *See e.g.*, *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d at 865-68; *Gregg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003). However, Indiana courts have declined to extend the "economic loss" doctrine beyond negligence cases. *See e.g.*, *Binns v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 132743 at *25-26; *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001). These cases are therefore inapplicable in the context of Defendants' claims for violating the Act.

No. IP 01-0186, 2001 U.S. Dist. LEXIS 24832, (S.D. Ind. June 19, 2001) (unpublished), defendant argued that plaintiffs' claim for conversion under the Act should be dismissed because "[the plaintiff's] claim amounts to nothing more than a breach of contract claim." *Id.* at *16. The court rejected that argument, held the existence of a contract was not dispositive, the plaintiff had pleaded facts supporting each element of a claim under the Act, and that "at this stage of the litigation, the Court cannot require more." *Id.* at *17-18. In *Koger v. T&C, Inc.*, No. 55A01-1305-CT-187, 2014 Ind. App. Unpub. LEXIS 373 at *23-24 (Ind. Ct. App. March 18, 2014) (unpublished), the court rejected defendant's argument that plaintiff could not show pecuniary loss under the Act where plaintiff also stated a breach of contract claim for overpaid rent.

Further, and as discussed above, Indiana courts routinely permit recovery where the damages claim and amount are the same for both breach of contract and violation of the Act.[22]

## 5. Plaintiffs Have Pleaded their Statutory Deception Claim with Particularity, Identifying the "Who, What, When, and Where" With Respect to Defendants' Deceptive Commission Statements.

Defendants also argue that the statutory deception claim should be dismissed because Plaintiffs did not plead it with sufficient particularity. Mot. at 21-22. Plaintiffs incorrectly complain that, in Count Four, "Plaintiffs identify no specific facts and, instead, merely refer to earlier paragraphs in their Complaint." *Id*. at 22. First, Plaintiffs specifically pleaded facts in Count Four relating to the false and misleading written commission statements that underlie the statutory deception claim. *See* Complaint, ¶¶127-28. Second, Defendants' criticism that Plaintiffs "refer to earlier paragraphs in their Complaint" is misplaced. It is common pleading practice for a Complaint to contain a Statement of Facts (*see* Complaint, ¶¶23-86) followed by the Causes of

---

[22] *See, e.g.*, *White*, 555 N.E.2d at 458 (same contract and Act damages of $1333.84, representing four months of unpaid rent); *Larson*, 979 N.E.2d at 659 (same contract damages and Act damages based upon amount of unpaid real estate commissions); *Longhi*, 914 N.E.2d at 838 (same contract damages and Act damages of $50,000 for failing to return a down-payment); *Schrenger*, 825 NE.2d at 880 (same contract and Act damages for failing to repay $25,000 in casino credit). The courts in *Larson* and *Longhi* also awarded treble damages under the Act.

Action that incorporate the pleaded facts (*id*, ¶¶87-143), and that is the format of Plaintiffs'
Complaint. The factual allegations relating to the false and misleading written commission
statements are summarized in Count Four (*id.*, ¶127-28), and Plaintiffs pleaded these factual
allegations in great detail in the Statement of Facts (*id.*, ¶¶42-49), which were expressly
incorporated by reference in Count Four (*id.*, ¶126).

While Defendants argue that Plaintiffs have failed to plead the "who, what, where, and
when" of their statutory deception claim, the Complaint itself belies this contention as each
element has been identified with particularity:

- **Who:** Biomet and Zimmer Biomet. Complaint, ¶42 ("Biomet provided
commission statements that purported to identify the amount of money due to the
Legacy Distributors"); ¶46 ("in or around 2015, following the completion of the
merger, Zimmer Biomet began sending the Legacy Distributors a "Zimmer
Biomet Commission Statement").

- **What:** False and misleading commission statements. Complaint, ¶11 ("Biomet ...
has been actively concealing these underpayments through fraudulent and
misleading commission statements."); ¶42 ("Biomet provided commission
statements that purported to identify the amount of money due to the Legacy
Distributors."); ¶43 ("The Legacy Distributors did not know, and could not tell
from the statements they were provided, that this commission payment failed to
pay the Legacy Distributors for all Biomet product sales from their former
territories as was their contractual right under the Agreements.").

- **When:** Semi-monthly commission statements sent to each Plaintiff beginning
with their retirement through the present. Complaint, ¶17.

- **Where:** Semi-monthly commission statements (Complaint, ¶17) sent by Biomet
and Zimmer Biomet, who are both headquartered in Warsaw, Indiana (*id.*, ¶¶7
and 8), to Defendants (*id.*, ¶¶1-6 identifying state of citizenship for each Plaintiff).

**F.    Count V – *De Facto* Merger/Mere Continuation/Alter Ego/Piercing the Corporate
Veil Claim**

In Count Five, Plaintiffs assert that Zimmer Biomet is responsible for the obligations of
Biomet by operation of law as a result of their June 2015 merger. Complaint, ¶132. Defendants
inaccurately refer to the June 2015 transaction that resulted in the formation of Zimmer Biomet

as an "acquisition" and state that "[t]he general rule in Indiana is that liabilities of one corporation are not passed along to a successor corporation through an *acquisition*. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1288 (Ind. 2009)" (Mot. at 24). Defendants are right on the law, but wrong on the facts. In Defendants' own words, the Biomet/Zimmer transaction was not an "acquisition," it was a "*merger*."[23] Under the Indiana Code, "[w]hen a merger takes effect … the surviving corporation has all liabilities of each corporation party to the merger") *See* Indiana Code § 23-1-40-6(a)(3).[24]

Zimmer Biomet is further liable under the doctrines of piercing the corporate veil, alter ego, *de facto* merger, and mere continuation. Complaint, ¶¶130-139. The Complaint identifies in great detail the underlying allegations that support Count Five – by which Plaintiffs seek to hold Zimmer Biomet liable – and Defendants cannot and do not challenge these allegations. *Id.*, ¶¶58-78. Each of the doctrines identified in Count Five is a means to hold one party liable for the obligations of another. Each is well-recognized under Indiana law. Defendants' sole argument is that these doctrines are not "independent causes of action" and, therefore, Count Five of the Complaint should be dismissed. Mot. at 23-24.[25] Yet, Defendants have not cited a single Indiana case where a court granted a motion to dismiss on these grounds. In fact, Defendants have not

---

[23] *See* Complaint at ¶59 (quoting Zimmer Biomet's 10-K filing with the SEC describing the "Biomet merger").

[24] In *Rodriguez v. Tech Credit Corp.*, 824 N.E.2d 442, 447 (Ind. Ct. App. 2005), defendant made the identical argument that Zimmer Biomet makes here, which the *Rodriguez* court rejected as "disingenuous." It stated: "Rodriguez contends that Tech succeeded to LTV's liabilities because it acquired LTV through a merger, while Tech asserts that it merely purchased the assets of LTV, which would mean that Tech did not acquire LTV's liabilities. We find this argument to be rather *disingenuous*, considering the document under which Tech acquired LTV is entitled 'Agreement of Merger' [and] the Agreement repeatedly refers to the transaction as a merger."

[25] Defendants sum up their argument by stating, "Count V in and of itself is a theory of recovery, not a stand alone claim." Mot. at 23. This is a distinction without a difference. If Plaintiffs ultimately prove that Zimmer Biomet should be held liable for Biomet's obligations, it matters not whether that liability is based upon labeling the veil piercing and related doctrines as "causes of action" or "theories of recovery." Thus, while dismissal is improper, as a practical matter, these "veil piercing" and related issues would remain in the case regardless of the Court's ruling on the motion to dismiss – if not as "separate causes of action" then as "theories of recovery." For this reason, Defendants' Motion directed at Count V is an exercise in futility.

cited a single Indiana case where a court disposed of a case at *any* stage of the proceeding based on Defendants' theory that these doctrines are not independent causes of action.

Defendants cite only two cases applying Indiana law for the proposition that piercing the corporate veil is not an independent cause of action: *U.S. ARG Corp.*, No. 3:10-CV-00311-PPS, 2014 U.S. Dist. LEXIS 2297 (N.D. Ind. Jan. 7, 2014), and *Reed v. Reid*, 980 N.E.2d 277 (Ind. 2010). Mot. at 23.[26] Yet, in both, the court ruled in favor of the *plaintiff* asserting a claim for piercing the corporate veil.

In *ARG*, the defendant moved to dismiss a claim for piercing the corporate veil asserted in an amended complaint on the grounds that it was time-barred. Judge Simon denied the motion and ruled that it related back to the original complaint under Rule 15(c). In *Reed* the Indiana Supreme Court overturned the trial court's grant of summary judgment in favor of the defendants because "[p]iercing the corporate veil involves a highly fact-sensitive inquiry that is not typically appropriate for summary disposition." 980 N.E.2d at 303. The court held that the grant of summary judgment was improper even though the plaintiff "[made] a separate claim to pierce the corporate veil of [defendant]." *Id.* at 298, n.16. Given that Indiana courts are loathe to dispose of veil-piercing claims even on summary judgment due to the fact-specific nature of these claims, *a fortiori* it is improper to dismiss veil-piercing claims at the 12(b)(6) pleadings stage.

In sum, neither *Reed* nor *ARG* supports the proposition that a defendant should escape liability merely due to the structure of the complaint, as Defendants argue. Mot. at 25 ("Count

---

[26] Defendants cite to the following cases that do not apply Indiana law and are, therefore, inapplicable: *International Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004) (applying Illinois law); *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472, 479 (W.D.N.C. 2003) (applying North Carolina law); *U.S. v. All Meat and Poultry Prods. Stored at Lagrou Cold Storage*, 470 F.Supp.2d 823, 833 (N.D. Ill. 2007) (applying Illinois law); *SieMatic Mobelwerke GmbH & Co. KG v. SieMatic Corp.*, 643 F.Supp.2d 675, 683 (E.D. Pa. 2009) (applying Pennsylvania law); *Croft v. Inlight Risk Management, Inc.*, No. 01C1766, 2002 U.S. Dist. LEXIS 16998 (N.D. Ill. Sept. 9, 2002) (applying Illinois law); and *Moses v. Innoprise Software*, No. C-12-05271-EDL, 2014 U.S. Dist. LEXIS 22407 (N.D. Cal. Feb. 21, 2014) (applying California law). *See* Mot. at 23-24.

24

Five of Plaintiffs' complaint should, therefore, be dismissed because it is not a stand-alone cause of action."). The plaintiff in *Reed* pleaded piercing the corporate veil as a separate cause of action, *see* 980 N.E. 2d at 298, n.16, yet the court found summary judgment was improper.

**G.     Count VI – Declaratory Judgment Claim**

Count Six is a request for declaratory relief regarding the parties' rights and obligations under the Agreements as well as the veil-piercing and related doctrines. Complaint, ¶¶140-43. Defendants' sole reference to Count Six is a one-sentence conclusory statement that it "is based solely on the above-referenced deficient theories and, consequently, Plaintiffs' lawsuit should be dismissed in its entirety." Mot. at 3. The Court should deny this request as Plaintiffs have properly pleaded facts to support each of their three claims for declaratory judgment: (1) that Plaintiffs are entitled to retirement-commission income on *all* Biomet products; (2) that Plaintiffs are entitled to retirement-commission income on all Biomet, Zimmer, and/or Zimmer Biomet products since the merger, *regardless* of branding or packing; and (3) that Zimmer Biomet is liable for Biomet's obligations pursuant to the merger and under the doctrines of *de facto* merger, mere continuation, alter ego, and piercing the corporate veil. *See* Complaint, ¶143. With respect to each of these declaratory judgment counts, the underlying factual allegations must be taken as true, and the Court cannot make a determination of the parties' rights and obligations at the dismissal stage.

### III.     CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that the Court deny Defendants' Motion.

Dated:  June 20, 2016

Respectfully submitted,

 /s/ *Damon R. Leichty*
Damon R. Leichty (21708-53)
Eileen S. Pruitt (28015-71)
BARNES & THORNBURG LLP
700 1st Source Bank Center
100  North Michigan
South Bend, IN 46601
Telephone:  574-233-1171

Gary Cruciani (admitted pro hac vice)
Travis E. DeArman (admitted pro hac vice)
MCKOOL SMITH
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000
gcruciani@McKoolSmith.com
tdearman@McKoolSmith.com

*Attorneys for Plaintiffs*
*Charles Hess, Marty Higgins,*
*Robert "Glen" McCormick,*
*Ronald Papa, Frank Shera, and*
*Al Tornquist*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served through email/ECF system and/or by United States Mail, first class postage prepaid, addressed to the following parties, this 20th day of June 2016:

Joshua B. Fleming
Michael A. Rogers
QUARLES & BRADY LLP
135 N. Pennsylvania St., Suite 2400
Indianapolis, IN 46204

_/s/  Damon R. Leichty_