**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| CHARLES HESS, MARTY HIGGINS, ROBERT "GLEN" MCCORMICK, RONALD PAPA, FRANK SHERA and AL TORNQUIST | ) ) ) ) ) |
| Plaintiffs, | ) NO. 3:16-CV-208 |
| vs. | ) ) |
| BIOMET, INC. and ZIMMER BIOMET HOLDINGS, INC. | ) ) ) |
| Defendants. | ) |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendant Biomet, Inc., and Zimmer Biomet Holdings, Inc.'s Motion to Dismiss (DE #18), filed on May 26, 2016. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.** Counts II, III, V, and VI are **DISMISSED.** Counts I and IV remain pending.

<u>BACKGROUND</u>

Plaintiffs Charles Hess, Marty Higgins, Robert McCormick, Ronald Papa, Frank Shera and Al Tornquist (together, "Plaintiffs") were each successful sales representatives with the medical device company Zimmer Holdings Inc. ("Zimmer") by 1980. (DE #1, ¶14.) Defendant Biomet, Inc. ("Biomet") is a medical device company that competed with Zimmer. (*Id.*) Between 1980 and 1983, Biomet allegedly enticed Plaintiffs to leave Zimmer and join Biomet by

-1-

offering them agreements that included a retirement-income program in the form of lifetime commissions on all products sold in their sales territories. (*Id.*) Upon Plaintiffs' retirements from Biomet, Biomet paid them commissions on products sold in their former territories. (*Id.*, ¶¶16-17.) Plaintiffs recently discovered that those commission payments were based on some, but not all, Biomet products sold in those territories. (*Id.* ¶18.) In 2015, Biomet and Zimmer merged, and became Defendant Zimmer Biomet Holdings, Inc. ("Zimmer Biomet"). (*Id.,* ¶19.) Since the merger, Zimmer Biomet has allegedly repudiated its obligations to Plaintiffs under the agreements. (*Id.*)

The Complaint alleges six causes of action against Biomet and Zimmer Biomet (together, "Defendants"): (1) breach of contract for failing to pay Plaintiffs commissions on all Biomet products sold in their former territories; (2) breach of contract and implied covenant of good faith and fair dealing for spinning-off, re-branding, substituting and otherwise discontinuing Biomet products; (3) breach of contract and implied covenant of good faith and fair dealing against Zimmer Biomet for failing to pay Plaintiffs commissions on all products sold by Biomet or Zimmer Biomet in their former territories; (4) violations of Indiana Code sections 34-24-3-1 and 35-43-5-3 for knowingly or intentionally making false or misleading commission statements with the intent to underpay Plaintiffs; (5) theories of *de facto* merger, mere

-2-

continuation, alter ego, and piercing the corporate veil; and (6) declaratory judgment. Defendants move to dismiss the Complaint in its entirety.

DISCUSSION

Facts

Plaintiffs are former sales representatives of Zimmer. (DE #1, ¶14.) Between 1980 and 1983, Biomet offered each of Plaintiffs an exclusive distributorship agreement ("Distributorship Agreements") to leave Zimmer and work for Biomet. (*Id.*) The Distributorship Agreements included a promise of a retirement-income program in the form of lifetime commissions on all products sold in Plaintiffs' sales territories. (*Id.*) Plaintiffs accepted Biomet's offer, and their contributions were instrumental in Biomet's success in growing into a dominant player in the musculoskeletal healthcare industry. (*See id.,* ¶15.) Between 1996 and 2005, Plaintiffs retired from Biomet. (*Id.,* ¶16.) Upon retirement, Plaintiffs each signed agreements terminating their distributorships and acknowledging the survival and continuation of their retirement-income program established under the Distributorship Agreements, and its applicability to Biomet's successors and assigns ("Termination Agreements"). (*Id.*) The Distributorship Agreements and Termination Agreements (together, "Agreements") allegedly entitle Plaintiffs to be paid a retirement

commission on all Biomet products sold in their former territories. (*Id.,* ¶¶17, 37.)[1]

Following Plaintiffs' retirement, Biomet paid Plaintiffs retirement commissions, and sent them semi-monthly payments along with statements purporting to show the commissions owed. (*Id.,* ¶¶17, 42-46.) These statements originally set forth a single dollar amount showing the total commission payment; years later, the statements included some additional information. (*Id.*) Plaintiffs allege that they did not know, and could not tell from these statements, that the commission payments failed to pay them for all Biomet product sales from their former territories. (*Id.,* ¶¶43, 44.) Plaintiffs relied on the accuracy and comprehensiveness of this information, believing that Biomet was honoring its obligation under the Agreements by properly calculating and paying their retirement commissions. (*Id.,* ¶¶ 17, 40.) Plaintiffs "recently" discovered that Biomet had only been paying them commissions on its joint reconstructive products, rather than all of its products, and that Biomet allegedly had been concealing the

---

[1] Plaintiffs did not attach copies of the Agreements to the Complaint, citing the Agreements' confidentiality provisions. (DE #1, ¶16 n.1.) After Defendants filed the instant motion to dismiss, the parties stipulated to the public filing of the Agreements. (DE #22 at 11 n.2; DE #22-12.) Plaintiffs filed copies of the Agreements in opposition to the motion. (*See* DE ##22-1 - 22-11.)

underpayments through misleading and incomplete commission statements. (*Id.,* ¶¶18, 39-41.)

On June 24, 2015, Biomet and Zimmer merged, and became Zimmer Biomet. (*Id.,* ¶58.) Zimmer Biomet holds itself out to the public as the combination of Zimmer and Biomet, and is controlled and directed by a management team drawn from senior executives from Zimmer and Biomet. (*Id.,* ¶¶22, 58-78.) Post-merger, Biomet and Zimmer Biomet allegedly spun off, re-branded, or discontinued Biomet products in favor of substitute Zimmer or Zimmer Biomet products, thereby reducing the Biomet products on which commissions are paid. (*Id.,* ¶21.) Plaintiffs believe they have only been paid commissions on a subset of Biomet's total product line, and no commissions on the Zimmer or Zimmer Biomet product lines. (*Id.,* ¶48.)

Motion to Dismiss Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff." *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citation omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[A] plaintiff's

-5-

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). "[E]ven with the heightened pleading requirements of *Iqbal* and *Twombly*, the pleading requirements to survive a challenge to a motion to dismiss remain low." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016).

<u>Count I – Breach of Contract Claim</u>

Count I alleges that Defendants breached the Agreements by "fail[ing] to pay [Plaintiffs] a commission on all Biomet products sold in their respective territories as required by the terms of the retirement-income program." (DE #1, ¶96.) To recover for breach of contract under Indiana law, a plaintiff must prove that "(1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Duncan v. Greater Brownsburg Chamber of Commerce, Inc.*, 967 N.E.2d 55, 57 (Ind. Ct. App. 2012) (citation omitted). Count I alleges that: (1) Plaintiffs and Defendants were parties to the Agreements, which provided for payment of lifetime commissions on all Biomet products sold in the relevant

-6-

territories (*id.*, ¶89-92); (2) Defendants violated the Agreements by failing to pay Plaintiffs commissions on all Biomet products sold in those territories (*id.*, ¶96); and (3) as a result of those violations, Plaintiffs suffered damages in the amount of unpaid commissions (*id.*, ¶¶101-105). Accepting the facts as alleged in the Complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, Count I sufficiently alleges facts stating a plausible breach of contract claim.

Defendants do not dispute whether Count I has facial plausibility. Rather, they contend that Count I must be dismissed because Plaintiffs allegedly conceded that Biomet had honored its obligations under the Agreements in a letter dated July 20, 2015, from Plaintiffs' counsel to Zimmer Biomet ("July 2015 Letter"). The July 2015 Letter was not attached as an exhibit to the Complaint. Nonetheless, Defendants maintain that the Court may consider the July 2015 Letter because the Complaint references and quotes from the letter. Defendants filed a copy of the July 2015 Letter as an exhibit to their motion to dismiss. (DE #19-1.) "In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion." *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013) (citation omitted). However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Id.* (citations omitted).

The court may consider such documents in ruling on a motion to dismiss without converting the motion into a motion for summary judgment. *Id.*

While the Complaint refers to and quotes from the July 2015 Letter (DE #1, ¶¶52-53), it does not appear to be central to Plaintiffs' claims. The Complaint alleges that, prior to the merger, Biomet proposed buyout offers to Plaintiffs in return for terminating their Agreements. (*Id.*, ¶¶39, 50.) Plaintiffs rejected these offers, and hired counsel to negotiate a compromise with Defendants. (*Id.,* ¶52.) Plaintiffs' counsel sent the July 2015 Letter to Zimmer Biomet, noting Zimmer Biomet's continuing obligation to pay Plaintiff the amounts due them under the Agreements, and proposed potential resolutions to the parties' conflicting positions. (*Id.*) In response, Zimmer Biomet declined further buyout negotiations and maintained that the Agreements do not extend to non-Biomet products. (*Id.,* ¶54.) The Complaint references the July 2015 Letter and other correspondence between the parties to "establish[] that a current, justiciable dispute exists between [Plaintiffs], Biomet, and Zimmer Biomet regarding their respective rights and obligations under the Agreements." (*Id.*, ¶57.)

Even if the July 2015 Letter is central to Plaintiffs' claims, Plaintiffs argue that the July 2015 Letter, which is marked "Offer of Compromise and Settlement pursuant to Rule 408 of the Rules of

Evidence," is inadmissible because it was prepared as part of settlement discussions with Defendants. Rule 408 provides that evidence regarding "a statement made during compromise negotiations about the claim" "is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408; *see United States v. Dish Network, L.L.C.*, No. 09-3073, 2015 WL 9164665, at *2 (C.D. Ill. Dec. 16, 2015) ("Rule 408 promotes settlement by encouraging frank discussions during settlements negotiations without fear that the statements would be used against the party later during the proceeding."). Defendants contend that Rule 408 does not apply because the July 2015 Letter was merely a response to Biomet's proposed buyout of future obligations under the Agreements. They maintain that no actionable dispute existed when the July 2015 Letter was written and no offer of compromise was made. Defendants also insist that Plaintiffs "opened the door" for the Court's consideration of the July 2015 Letter by pleading its existence and quoting it in the Complaint. They rely upon case law addressing motions for summary judgment to assert that "[w]hen a party opens the door to evidence that would be otherwise inadmissible, that party cannot complain on appeal about the admission of that evidence. And when a party puts evidence at issue, that party must accept the consequence[s] of opening the door to that evidence." *United States v. Dish Network, L.L.C.*, 75

F. Supp. 3d 942, 971 (C.D. Ill. 2014), *vacated in part on other grounds on recons.*, 80 F. Supp. 3d 917 (C.D. Ill. 2015) (quoting *Estate of Escobedo v. Martin,* 702 F.3d 388, 400 (7th Cir. 2012) (citations omitted)) (rejecting argument that settlement material was inadmissible under Rule 408 where arguing party had cited the material first).

"Rule 408 is an evidentiary rule, which is best addressed in context of admissibility of evidence at trial." *PTR, Inc. v. Forsythe Racing, Inc.*, No. 08 C 5517, 2009 WL 1606970, at *4 (N.D. Ill. June 9, 2009) (denying motion to strike complaint allegations based on Rule 408 as premature, and allowing defendants to file motion *in limine* if case is presented to jury); *see Brandy v. Maxim Healthcare Servs., Inc.,* No. 2:12 CV 192, 2012 WL 5268365, at *2 (N.D. Ind. Oct. 23, 2012) (denying motion to strike pleading based on Rule 408 because "it is too early to determine what evidence would be used and whether it would be barred by Rule 408"). The Court finds that whether Rule 408 applies to the July 2015 Letter is premature at this stage of the litigation. *See Abercrombie & Fitch Co. v. Fed. Ins. Co.,* No. 2:06-CV-831, 2008 WL 656029, at *5 (S.D. Ohio Mar. 11, 2008) (denying motion to dismiss, explaining "whether Rule 408 applies to [plaintiff's] claim cannot be determined at the pleading stage of this case"). The possibility that Rule 408 precludes Defendants from offering evidence to disprove Count I is inappropriate for the Court to consider in the

context of this Rule 12(b)(6) motion. "Whether this evidence is admissible as relevant, probative and permissible, is a decision that can only be made in a legal and factual context, which cannot be determined from the pleadings standing alone." *Id*.[2] Defendants' motion to dismiss Count I is **DENIED**.

Counts II and III

Defendants move to dismiss Counts II and III. Count II alleges that Defendants "breached the Agreements and the implied covenant of good faith and fair dealing by spinning off, re-branding, substituting and otherwise discontinuing Biomet-branded products, in favor of substantially similar, if not functionally identical, product lines bearing a Zimmer and/or Zimmer Biomet brand, and by failing to pay [Plaintiffs] a commission on such Zimmer or Zimmer Biomet branded products." (DE #1, ¶113.) Count III alleges that Zimmer Biomet "breached the Agreements and the implied covenant of good faith and fair dealing by failing to pay [Plaintiffs] commissions on all products sold by Biomet or Zimmer Biomet in [Plaintiffs'] former territories, regardless of whether such products are branded as Biomet, Zimmer, or Zimmer Biomet

---

[2] Even if the Court were to consider the July 2015 Letter, the Complaint includes allegations which, when considered in the light most favorable to Plaintiffs, reasonably infer that the July 2015 Letter was written before Plaintiffs discovered that Biomet had been underpaying Plaintiffs in violation of the Agreements. (*See* DE #1, ¶¶39-41 (alleging Plaintiffs only recently discovered Biomet's failure to pay commissions on all of its products as a result of discussions with Biomet's counsel in 2015).)

products." (*Id.,* ¶123.) Defendants argue that Counts II and III should be dismissed because they do not plead valid claims for breach of duty of good faith under Indiana law. Plaintiffs respond that Counts II and III allege a duty of good faith as a subset of their breach of contract claims, not as separate causes of action.

Defendants maintain that Counts II and III do not state breach of contract claims because they do not allege that Defendants failed to perform any obligation under the Agreements, but rather, rely on an implied covenant of good faith and fair dealing as the basis of the alleged breach. *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 373 F. Supp. 2d 829, 847 (S.D. Ind. 2005) (dismissing breach of contract claim where plaintiffs did not allege breach of contractual term, but rather, "something akin to breach of the duty to act in good faith and in accordance with reasonable standards of fair dealing"); *Perfect Flowers, Inc. v. Teleflora LLC,* No. 1:10-CV-1031, 2012 WL 2994636, at *3 (S.D. Ind. July 20, 2012) (dismissing breach of contract claim, rejecting plaintiff's contention that "although no specific provision of the contract was breached, Defendant breached its obligation of good faith and fair dealing by exceeding the scope of the contract"). Count II alleges that Defendants spun off, re-branded, substituted and otherwise discontinued Biomet products. But the Complaint does not identify any contractual obligation that Defendants

allegedly breached by doing so. Thus, Count II does not state a breach of contract claim.

Count III alleges that Zimmer Biomet failed to pay Plaintiffs commissions on all products sold by Biomet or Zimmer Biomet, regardless of whether they were branded as Biomet, Zimmer, or Zimmer Biomet. Defendants argue that this claim does not plead that the parties intended the retirement commissions on Biomet products to include Zimmer and Zimmer Biomet products. *See Fellows v. Bd. of Trustees of Welborn Clinic*, 63 F. Supp. 2d 942, 944 (S.D. Ind. 1998) ("The primary and overriding purpose when interpreting a written contract is to give effect to the parties' mutual intent at the time the contract is written."). In response, Plaintiffs cite allegations supporting their entitlement to retirement commissions for products sold by Zimmer Biomet: (1) the Termination Agreements expressly provide that the retirement income program "would be binding on Biomet, and its respective successors and assigns" (DE #1, ¶35); (2) Zimmer and Biomet merged, resulting in a single combined company, and under Indiana law, Zimmer Biomet succeeds to all liabilities of Biomet; and (3) Zimmer Biomet's liability is based on the doctrines of *de facto* merger, mere continuation, alter ego, and piercing the corporate veil. (*Id.*, ¶¶22, 58-78.) These Complaint allegations, coupled with Count III's allegation that the Agreements "provide for payment of a lifetime commission on all Biomet products sold in the relevant

-13-

territories" (*id.*, ¶¶120-21), state a breach of contract claim against Zimmer Biomet for its alleged failure to pay Plaintiffs commissions on all Biomet products sold in the relevant territories after the merger. *See* Ind. Code § 23-1-40-6(a)(3) ("When a merger takes effect . . . the surviving corporation has all liabilities of each corporation party to the merger").

Plaintiffs insist that whether the parties intended for the Agreements to apply to Zimmer and Zimmer Biomet products is a fact-intensive issue that is inappropriate for resolution under a Rule 12(b)(6) motion. They rely on *Zimmer US Inc. v. Mire*, 188 F. Supp. 3d 843 (N.D. Ind. 2016), in which the court denied a motion to dismiss a breach of contract claim where the word "assigned" was not defined in the agreement, and the resolution of "whether a specific territory was 'assigned' to Mire . . . would involve an assessment of evidence . . . to determine the parties' intent when they signed the agreement." *Id*. at 851. Here, the Complaint does not allege any ambiguous language in the Agreements. Count III alleges that the Agreements provided for commission payments "on all *Biomet* products sold in the relevant territories." (DE# 1, ¶120 (emphasis added).) The Complaint alleges that the Distributorship Agreements "provide a retirement-income program that would pay a lifetime commission on all *Biomet* products sold in the relevant territory," and that "the program would be paid on a percentage of 'net sales'" that "appl[ies] to *Biomet's* entire

-14-

product line without limitations of any type." (*Id.*, ¶¶34, 36 (emphasis added); *see id.*, ¶37 ("The Agreements entitle [Plaintiffs] to be paid a commission based upon the sales of all *Biomet* products within their former territories.") (emphasis added).) Because the Complaint does not allege a contractual obligation for Zimmer Biomet to pay Plaintiffs a commission on any products other than Biomet products, Count III only states a breach of contract claim relating to Biomet products.

Plaintiffs contend that even if they had pleaded a breach of an implied covenant of good faith and fair dealing as a separate cause of action, dismissal of Counts II and III is not warranted. "Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; the recognition of an implied covenant is generally limited to employment contracts and insurance contracts." *Old Nat. Bank v. Kelly,* 31 N.E.3d 522, 531 (Ind. Ct. App. 2015) (citing *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 123 (Ind. Ct. App. 2008)). The Court of Appeals of Indiana has noted that there is "no absolute restriction" of a duty of good faith and fair dealing to employment and insurance contracts, and has discerned "no crucial difference between insurance companies and banks, as each—from a superior vantage point—offer customers contracts of adhesion." *Kelly*, 31 N.E.3d at 531. Plaintiffs rely on *Kelly* to argue that Defendants had a "superior vantage point" because they have exclusive control of

-15-

their product sales and the calculation and reporting of the retirement commissions for those sales. But the Complaint does not allege that Defendants had a superior vantage point when the parties entered into the Agreements, or that the parties entered into any contracts of adhesion.[3] Rather, the Complaint alleges that Plaintiffs were "highly successful sales representative[s]," and that "Biomet struggled to sell medical devices" and "needed an incentive that would convince these highly-successful sales representatives to take a risk on a fledgling firm like Biomet." (DE# 1, ¶¶ 14, 23, 25.) As such, this argument is unpersuasive.

Plaintiffs also argue that if a contract is ambiguous, the courts will impose a duty of good faith and fair dealing. *See Allison*, 883 N.E.2d at 123. "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) (citation omitted). Plaintiffs assert that the Agreements are ambiguous because the parties interpret them differently. But "the fact that the parties disagree over the meaning of the contract does not, in and of itself, establish an ambiguity." *Claire's Boutiques, Inc. v. Brownsburg Station*

---

[3] Adhesion contracts are "standardized contracts, which, imposed and drafted by a party of superior bargaining strength, relegate subscribing parties only the opportunity to adhere to the contract or reject it." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 58 n.2 (Ind. Ct. App. 2014).

*Partners LLC,* 997 N.E.2d 1093, 1097 (Ind. Ct. App. 2013) (citation

omitted).   Plaintiffs point to no allegations in the Complaint

indicating that the Agreements are ambiguous, and the Court has

found none.   Courts applying Indiana law have refused to find an

independent cause of action for breach of a duty of good faith and

fair dealing in similar circumstances:

> Based on Indiana's reluctance to extend this duty to
> unambiguous non-insurance and non-employment contracts,
> the general limitation to employment and insurance
> contracts, and the lack of allegations in the pleadings
> that the contracts were ambiguous, the Court determines
> that claims for breach of covenant and implied covenant
> of good faith and fair dealing are not viable under the
> unambiguous [] agreements that were freely entered into
> by the parties.

*7E Fit Spa Licensing Grp. LLC v. 7EFS of Highlands Ranch, LLC*, No.

115CV01109, 2016 WL 4761562, at *10 (S.D. Ind. Sept. 13, 2016)

(dismissing such claims); *see Hamilton v. Wells Fargo Bank, N.A.*,

No. 09-04152 CW, 2010 WL 1460253, at *3 (N.D. Cal. Apr. 12, 2010)

(dismissing breach of covenant of good faith and fair dealing claim

where plaintiff had not shown contract was ambiguous or pertained

to employment or insurance matters) (applying Indiana law).   Even

if the Agreements are found to be ambiguous, the duty of good faith

and fair dealing would only help the Court interpret the contracts,

rather than support an independent cause of action.   *See Ball v.

Versar, Inc.,* No. IP01-0531, 2002 WL 33964449, at *7 (S.D. Ind.

Sept. 6, 2002)(dismissing breach of duty of good faith and fair

dealing claim, noting that "even if a contractual ambiguity is

-17-

identified later in the case, so that the court might turn to an implied duty of good faith and fair dealing to help interpret the contract, that still would not support an independent tort claim"); *ArcAngelo, Inc. v. Directbuy, Inc.,* No. 3:13CV104, 2013 WL 6095678, at *4 & n.1 (N.D. Ind. Nov. 20, 2013) (similar) (citing *First Federal Savings Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600 (Ind. 1990)). For these reasons, neither Count II nor Count III state a claim for breach of an implied covenant of good faith and fair dealing.

For the reasons provided above, Count II does not state a claim for breach of contract, and therefore is **DISMISSED**. Count III does not state a breach of contract claim for failing to pay commissions on sales of Zimmer products or Zimmer Biomet products. While Count III does state a breach of contract claim against Zimmer Biomet for failing to pay commissions on sales of all Biomet products, Count I alleges the same claim. (*See* DE #1, ¶¶95-96 (alleging breach of contract claim against Zimmer Biomet and Biomet for failing to pay Plaintiffs commissions on all Biomet products sold in their respective territories).) Because the only claim remaining in Count III is duplicative of Count I, the Court in its discretion **DISMISSES** Count III in its entirety.[4]

---

[4] In a footnote, Defendants assert that Counts II and III should be dismissed with respect to Plaintiff Frank Shera ("Shera") because his Termination Agreement defines "Products" as "orthopedic products offered for sale by Biomet under the Biomet trademark,"

<u>Count IV</u>

Count IV asserts a deception claim against Defendants under the Indiana Crime Victims Relief Act ("CVRA"). Indiana Code section 35-43-5-3 provides that a person who "knowingly or intentionally makes a false or misleading written statement with intent to obtain property" commits criminal deception. Ind. Code § 35-43-5-3(a)(2). Under the CVRA, one who suffers a pecuniary loss due to a violation of Section 35-43, including criminal deception, may recover treble damages, costs and attorney's fees. *See* Ind. Code § 34-24-3-1(1)-(3). To recover under the CVRA, a plaintiff must prove the elements of the criminal act by a preponderance of the evidence. *See Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012); *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166 (Ind. Ct. App. 2008).

Defendants argue that Count IV must be dismissed because the alleged deception is really a breach of contract claim. "Recovery under the [CVRA] is not based on a breach of contract, but must be

---

and states that "Products sold by Biomet's subsidiary corporations are not included within the meaning of 'Products' used herein." (DE #19 at 13 n.5.) Plaintiffs respond that these provisions were taken out of context from Shera's Termination Agreement, and do not apply to the commissions at issue, but rather, to a particular customer account with which Shera was to be involved after his retirement. Defendants do not address Plaintiffs' response in their reply brief. Their silence leads the Court to conclude that Defendants concede this argument. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("silence leaves us to conclude" a concession; "[f]ailure to respond to an argument . . . results in waiver").

predicated on an independent tort." *State Grp. Indus. (USA) Ltd. v. Murphy & Assocs. Indus. Servs., Inc.,* 878 N.E.2d 475, 480 (Ind. Ct. App. 2007); *see JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC,* 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) ("Where the source of a party's duty to another arises from a contract, tort law should not interfere."). Defendants maintain that because Count IV rests on allegations that they broke a promise to pay Plaintiffs commissions on all Biomet products sold in Plaintiffs' former territories, it merely repackages Plaintiffs' breach of contract claims as a deception claim. *See Dunlap v. Switchboard Apparatus, Inc.,* No. 1:12-CV-0020-TWP-DKL, 2012 WL 1712554, at *10 (S.D. Ind. May 15, 2012) (dismissing CVRA conversion claim that was "little more than a repackaged version of the breach of contract claim, presumably brought to up the ante by raising the specter of treble damages") (internal quotations and citation omitted). Count IV alleges that:

> Biomet has systemically underpaid [Plaintiffs] for many years . . . and has concealed these underpayments through false or misleading commission statements. Since the merger, Defendants have continued to underpay [Plaintiffs] and have continued to conceal these underpayments through false or misleading commission statements. . . . These statements were designed to actively conceal these underpayments and mislead [Plaintiffs] by paying them on only a subset of Biomet products, *despite a plain contractual obligation* to pay [Plaintiffs] on all Biomet products.

(DE #1, ¶128 (emphasis added).)  Thus, the deception alleged in Count IV is related to Defendants' alleged failure to pay Plaintiffs commissions in breach of the Agreements.

Plaintiffs argue that Defendants engaged in conduct prohibited by the CVRA that is separate from their breach of the Agreements.  According to Plaintiffs, their breach of contract claim concerns Defendants' alleged failure to pay commissions owed under the Agreements, while Count IV concerns Defendants' alleged false and misleading commission statements.  They point to allegations that Defendants provided commission statements "contain[ing] no substantive information beyond the total amount of commission to be paid" (DE #1, ¶42), that Plaintiffs "did not know, and could not tell from the statements . . . that this commission payment failed to pay [Plaintiffs] for all Biomet product sales from their former territories" (*id.*, ¶43), and that Defendants designed the statements "to actively conceal these underpayments and mislead [Plaintiffs] by paying them on only a subset of Biomet products," and gained illicit proceeds by doing so (*id.*, ¶128).  Plaintiffs maintain that Defendants' alleged deception was not simply underpaying Plaintiffs, but rather, issuing false and misleading commission statements in order to underpay Plaintiffs.

Plaintiffs rely upon Indiana case law that has allowed recovery under the CVRA notwithstanding that the CVRA claim was

related to an alleged breach of contract. *See, e.g., Longhi v. Mazzoni*, 914 N.E.2d 834, 846 (Ind. Ct. App. 2009)(affirming treble damages award for deception where defendant failed to return earnest deposit in breach of a contract to build a house); *Larson*, 979 N.E.2d at 658, 661 (affirming treble damages award for conversion where defendant breached oral contract for commissions); *State Grp. Indus.*, 878 N.E.2d at 478 (remanding to determine damages under CVRA where trial court found breach of contract and knowing submission of false or misleading invoices). While none of these opinions address the issue of whether the CVRA claim was merely a repackaged version of a breach of contract claim, they demonstrate that Indiana courts are not averse to allowing recovery for CRVA claims that relate to a breach of contract. Defendants argue that unlike Plaintiffs' cited case law, Count IV is based on the parties' disagreement over the contract interpretation, *i.e.,* the scope of commissions to which Plaintiffs are entitled under the Agreements. But Defendants do not cite, and the Court was unable to find, case law granting a motion to dismiss where the CVRA claim was based on the parties' disagreement over the interpretation of a contract.

Defendants maintain that Plaintiffs seek "to elevate the disagreement over contract interpretation into actionable conduct solely because Defendants sent commissions statements that reflect the amount Defendants believe is due to Plaintiffs under the

contracts." (DE #29 at 9.) They insist that "the Indiana legislature did not intend to criminalize bona fide contract disputes." *French-Tex Cleaners*, 893 N.E.2d at 1168. In support, they rely upon cases that applied the summary judgment standard of review and considered evidence in dismissing tort claims. *See id.* at 1167-68 (affirming summary judgment on conversion claim where there was "not a material issue of fact" regarding whether alleged tortfeasor had requisite *mens rea* to support conversion claim, rather, he "acted in accordance with a reasonable interpretation of the ambiguous contract"); *T-3 Martinsville, LLC v. US Holding, LLC,* 911 N.E.2d 100, 121 (Ind. Ct. App. 2009) (affirming summary judgment on deception claim where there was "absolutely no evidence" that alleged tortfeasor "made any false or misleading written statement . . . with the intent to obtain property"); *DBL Axel,* 977 N.E.2d at 365 (affirming summary judgment on conversion claim, among other tort claims, where evidence "d[id] not demonstrate the degree of culpability necessary to establish any of the Tort Claims"); *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (affirming summary judgment on fraud claim where "our review of the designated evidence reveals that Tobin's fraud claim is, in fact, merely a repackaged version of his breach of contract claim"). As Plaintiffs note, the summary judgment standard of review differs from the Rule 12(b)(6) standard the Court is to apply here. The purpose of a Rule 12(b)(6) motion to dismiss is

-23-

"to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). This standard requires the Court to accept as true all well pled facts alleged by Plaintiffs and draw all permissible inferences in their favor. *See Parish*, 614 F.3d at 679. A claim's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *Sheridan Health Care Center, Inc. v. Centennial Healthcare Corp.,* No. IP01-0186CMS, 2001 WL 1029111 (S.D. Ind. June 19, 2001), the court denied a motion to dismiss a CVRA conversion claim and rejected the argument that the claim was simply one for breach of contract. *Id*. at *6. In doing so, the court relied on Indiana case law that did not find the existence of a contract between the parties to be dispositive, but instead, looked to evidence of the individual elements of a conversion claim to reach a decision. *Id*. (citing *Gilliana v. Paniaguas*, 708 N.E.2d 895 (Ind. Ct. App. 1999), and *NationsCredit Commercial v. Grauel Enter.,* 703 N.E.2d 1072 (Ind. Ct. App. 1998)). "[T]he [Indiana] courts stressed that unlike the 'innocent breach of contract' action, in a civil conversion action, the party alleging the civil conversion must prove the criminal intent element." *Id*. (citations omitted); *see French-Tex Cleaners*, 893 N.E.2d at 1167 ("It is this *mens rea* requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which

situations the criminal conversion statute was not intended to cover.").  The *Sheridan* court denied the motion to dismiss the conversion claim because the plaintiff had adequately alleged its elements, including that the defendant acted "knowingly or intentionally."  2001 WL 1029111 at *6.[5]

To state a CVRA claim based on criminal deception, Plaintiffs must allege that Defendants knowingly or intentionally made a false or misleading written statement with intent to obtain property, and that Plaintiffs suffered a loss as a result.  Ind. Code §§ 34-24-3-1, 35-43-5-3(a)(a).[6]  While Defendants contend that the commission statements reflect the amount they believe is due to Plaintiffs under the Agreements, this is not alleged in the Complaint.  Rather, Count IV alleges that "Defendants knowingly or intentionally made false or misleading written statements (each commission statements provided to [Plaintiffs]) with the intent to obtain property" and "reaped millions of dollars in proceeds,

---

[5] Plaintiffs also rely upon *Koger v. T & C, Inc.,* 9 N.E.3d 259 (Ind. Ct. App. Mar. 18, 2014) (Table), in support of their argument.  As noted by Defendants, *Koger* was an unpublished memorandum decision. An unpublished memorandum decision of the Court of Appeals of Indiana "shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case."  Ind. R. App. P. 65(D).

[6] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."  Ind. Code § 35-41-2-2(b).  "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."  Ind. Code § 35-41-2-2(a).

otherwise intended for the retirement of [Plaintiffs], by using these commission statements in the manner they did." (DE #1, ¶¶127-28.) Drawing all permissible inferences in Plaintiffs' favor, Count IV does not allege an innocent breach of contract, but rather, alleges that Defendants knowingly or intentionally made false or misleading written commission statements to Plaintiffs in order to underpay them. *Cf*. *Dunlap*, 2012 WL 1712554, at *9-*10 (dismissing conversion claim that merely alleged that "Defendants failed to pay the amounts owed, and failed to provide Plaintiffs the promised stock ownership" because it was "little more than a repackaged version" of breach of contact claim).

Defendants also argue that Count IV should be dismissed because the only pecuniary losses alleged in Count IV are the same losses alleged in Plaintiffs' breach of contract claims. They cite *Epperly v. Johnson,* 734 N.E.2d 1066 (Ind. Ct. App. 2000), in which the court reversed a punitive damages award based on a fraud claim where "[t]he misrepresentation did not result in injury distinct from that resulting from the breach [of contract], and it thus is not independently actionable as fraud." *Id*. at 1073. Defendants also rely upon *Fritzinger v. Angie's List, Inc.,* No. 1:12-CV-01118-JMS, 2013 WL 772864, *3 (S.D. Ind. Feb. 28, 2013), in which the court dismissed CVRA claims that failed to allege an independent tort and a separate distinct injury.

Plaintiffs do not deny that the Complaint alleges the same injury for their breach of contract and deception claims. Rather, they maintain that the independent injury requirement does not extend to CVRA claims. *Epperly* did not address a CVRA claim, but rather, addressed a fraud claim. And while *Fritzinger* dismissed CVRA claims that failed to allege a distinct injury, the court had also found that the CVRA claims failed to allege an independent tort. Here, in contrast, Count IV alleges an independent tort. Plaintiffs also cite Indiana cases in which the damages claim and amount were the same for the breach of contract and CVRA claims. *See, e.g., Larson*, 979 N.E.2d at 662 (same damages for CVRA conversion claim and breach of oral contract for commissions); *Longhi*, 914 N.E.2d at 846 (same damages for CVRA deception claim and breach of contract to build house). Given the Indiana case law awarding damages under the CVRA where plaintiffs sought the same damages for breach of contract, the Court declines to dismiss Count IV based solely on the lack of an alleged independent injury.

Defendants argue that Count IV does not satisfy the heightened pleading requirements of Federal Rules of Civil Procedure Rule 9(b). Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[A] plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir.

2011) (citation omitted).  Courts apply the heightened pleading standard of Rule 9(b) to claims of criminal deception.  *See e.g., Heartland Recreational Veh., LLC v. Forest River, Inc.*, No. 3:08-CV-490ASCAN, 2009 WL 1085837, at *4 (N.D. Ind. Apr. 22, 2009).

Defendants contend that Count IV fails to satisfy Rule 9(b) because it offers no degree of particularity, and merely refers to earlier paragraphs in the Complaint.  The Court disagrees.  Count IV explicitly incorporates the prior allegations of the Complaint.  (DE #1, ¶126.)  The Complaint provides representative examples of Defendants' allegedly misleading commission statements, and alleges that Plaintiffs did not know, and could not tell from the statements, that Defendants failed to pay them commissions for all Biomet product sales from their former territories.  (*Id.*, ¶¶42-46.)  It further alleges that Defendants knowingly or intentionally made these false or misleading commission statements, and procured proceeds intended for Plaintiffs by doing so.  (*Id.*, ¶¶127-28.)  The Complaint alleges that Defendants (the who) concealed their underpayment of Plaintiffs' retirement commissions (the what) by sending fraudulent or misleading commission statements (the how) to Plaintiffs (the where, reasonably inferred to be Plaintiffs' states of citizenship) on a monthly or semi-monthly basis from the inception of their retirement-income payments (the when).  (*Id.* ¶¶ 1-6, 11, 17, 42-47, 127-28.)  As such, Count IV states a claim for relief under the heightened Rule 9(b) motion to dismiss standard.

<u>Count V</u>

Defendants argue that Count V should be dismissed because it asserts a theory of recovery rather than a standalone claim. Count V alleges that the transaction resulting in the formation of Zimmer Biomet was a merger, or alternatively, a *de facto* merger, and that Zimmer Biomet is responsible for the liabilities of Biomet as a result of the *de factor* merger. (DE #1, ¶134.) It also alleges that Zimmer Biomet is a "mere continuation" of Biomet (*id.,* ¶135), that Biomet and Zimmer Biomet are operated as a single entity, whereby Biomet serves as the alter ego of Zimmer Biomet (*id.,* ¶136), and that "[t]here is such unity of interest and ownership between Zimmer Biomet and Biomet that the interests of Zimmer Biomet and Biomet are inseparable, and the adherence to a fiction of separate entities would sanction fraud or promote injustice" toward Plaintiffs such that "the Court should pierce the corporate veil and hold that Zimmer Biomet is legally obligated to honor the terms of the Agreements" (*id.,* ¶¶138-39). Defendants argue that Count V should be dismissed because "[p]iercing the corporate veil is not an independent cause of action, nor a separate claim." *United States v. ARG Corp.,* No. 3:10-CV-00311-PPS, 2014 WL 88928, at *2 (N.D. Ind. Jan. 7, 2014) (citing *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012)).

Plaintiffs respond that the cases cited by Defendants ruled in favor of the parties asserting claims for piercing the corporate

veil.  In *Reed*, the plaintiff sought to impose liability on other corporate entities allegedly owned or controlled by a defendant, and advanced "several theories" in support of these claims.  980 N.E.2d at 297; *see id.* at 299-301 (addressing *de facto* merger, mere continuation, and piercing the corporate veil).  The Supreme Court of Indiana explained that "[t]hese theories create no independent causes of action, but 'merely furnish[] a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation." *Reed*, 980 N.E.2d at 297-98 (quoting 1 William Meade Fletcher, Fletcher Cyc. of the Law of Corp. § 41.10 at 136 (perm. ed. rev. vol. 2006)).  In a footnote, the court noted that the plaintiff had made "a separate claim to pierce the corporate veil." *Id.* at 298 n.16.  The court affirmed the denial of summary judgment of that claim, explaining that "[p]iercing the corporate veil involves a highly fact-sensitive inquiry that is not typically appropriate for summary disposition." *Id.* at 303.

In *ARG Corporation*, the plaintiff sought to amend the complaint to seek recovery under a piercing the corporate veil theory of liability.  2014 WL 88928, at *2.  The amended complaint asserted a single claim for the recovery of certain costs, but added allegations that a defendant had abused the corporate form, and so should be held liable for the costs under the corporate veil-piercing doctrine.  *Id.*  The defendants moved to dismiss,

arguing that the amendment was barred by the statute of limitations and failed to state a claim for piercing the corporate veil. *Id*. The court rejected the defendant's statute of limitation argument because the original complaint stated the same claim against the defendant for recovery of costs; the amended complaint "simply added a new theory of recovery." *Id*. The court explained that "[p]iercing the corporate veil is not an independent cause of action, nor a separate claim." *Id*. (citing *Reed*, 980 N.E.2d at 301). "It is a remedy, a 'means of imposing liability on an underlying cause of action such as a tort or breach of contract.'" *Id*. (quoting 1 Fletcher Cyc. Corp. § 41.10 at 136). The court then considered the plaintiff's allegations, and found that they "sufficiently alleged a claim for piercing the corporate veil." *Id*. at *3.

The Court agrees with Defendants that piercing the corporate veil is not an independent cause of action in Indiana. *Reed's* footnote mentioning the existence of a separate veil-piercing claim is not sufficient to counter the Supreme Court of Indiana's admonition that theories imposing liability on other corporate entities allegedly owned or controlled by a defendant "create no independent causes of action." 980 N.E.2d at 297. The Court therefore **GRANTS** Defendants' motion to dismiss Count V. However, the Court notes that these theories are alleged elsewhere in the Complaint, albeit in a more cursory manner. For example, Count I

alleges that Zimmer Biomet is responsible for the underpayment of retirement commissions to Plaintiffs "under the doctrines of '*de facto* merger,' 'mere continuation,' 'alter ego,' and/or 'piercing the corporate veil.'" (DE #1, ¶90; *see id.,* ¶¶58-78 (alleging facts to support these theories of recovery).) As such, these theories remain pending in this litigation.

<u>Count VI</u>

Finally, Count VI seeks a declaratory judgment that: (1) Plaintiffs are entitled to retirement commission income on all Biomet products sold in their respective territories; (2) Plaintiffs are entitled to retirement commission income on all Biomet, Zimmer, and/or Zimmer Biomet products sold in their respective territories since the merger; and (3) Zimmer Biomet is liable for Biomet's obligations pursuant to the merger and under the doctrines of *de facto* merger, mere continuation, alter ego, and piecing the corporate veil. (DE #1, ¶143.) Defendants argue that Count VI is based solely on the Plaintiffs' other theories of liability, and therefore is duplicative. "When declaratory relief and another remedy are substantially similar, the court may exercise its discretion to dismiss the declaratory judgment claim." *The Pantry, Inc. v. Stop-N-Go Foods, Inc.,* 777 F. Supp. 713, 717 (S.D. Ind. 1991) (citation omitted) (dismissing declaratory judgment claim where the claim "is inappropriately raised because the plaintiff may be fully compensated if it

prevails on the breach of contract claim"); *see Lansing v. Carroll*, 868 F. Supp. 2d 753, 763–64 (N.D. Ill. 2012) ("Because the declaratory judgment claim (Count I) fails to add anything not already raised in the breach of contract claim (Count II), in an exercise of its discretion the court dismisses Count I."). Plaintiffs respond that they properly pled facts to support the three claims for declaratory judgment in Count VI, and that the Court cannot determine the parties' rights and obligations at dismissal stage. They do not assert that their declaratory judgment claim differs in any way from other claims raised in the Complaint.

A review of the Complaint demonstrates that Count VI essentially seeks the same relief sought in Counts I (breach of contract), III (breach of contract), and V (piercing the corporate veil). As explained above, the only viable claim for relief stated in Count III is duplicative of Count I. While Count V does not allege an independent cause of action, the theories asserted in Count V are also alleged in Count I, and thus, remain pending. As such, the declaratory judgment claim does not state a viable claim for relief that is not already raised in Count I. Because Count VI fails to add any viable claim for relief not already raised in Count I, the Court in an exercise of its discretion **DISMISSES** Count VI.

CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (DE# 18) is **GRANTED IN PART** and **DENIED IN PART.** Counts II, III, V, and VI are **DISMISSED.** Counts I and IV remain pending.


DATED:  February 16, 2017        **/s/ RUDY LOZANO, Judge**
                                 **United States District Court**