# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES HESS, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CAUSE NO. 3:16-CV-208-JD-MGG ) |
| BIOMET, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

## OPINION AND ORDER

On January 19, 2018, Plaintiffs filed their Emergency Motion for an Order Requiring Defendants to Preserve Evidence [DE 91] and their Motion for Telephonic Discovery Status Conference [DE 93]. For the reasons discussed below, the Court now denies both motions and sets a hearing on all remaining discovery matters.

## I. RELEVANT BACKGROUND

Plaintiffs are retired Biomet distributors. Through the instant lawsuit, Plaintiffs claim that they are entitled to ongoing, retirement commissions based on the terms of Distributorship Agreements signed and executed in the early 1980s when each of them was originally hired. Plaintiffs allege that since their retirements between 1996 and 2005, Biomet has violated the Distributorship Agreements by underpaying their commissions, which they contend were to be calculated based upon net sales from their former territories.

To prove their claims, Plaintiffs have sought discovery related to, among other things, the interpretation and application of the "long-term commission program" described in each of the Distributorship Agreements. Dissatisfied with the extent of Biomet's responses to their Requests for Production of Documents, Plaintiffs filed a motion to compel [DE 58] seeking documents concerning (1) other former distributors subject to the long-term commission program to show

how the commission program is applied to the non-plaintiff distributors; and (2) the current distributors in Plaintiffs' former territories to show the Biomet and Zimmer Biomet sales upon which the current distributors' commissions are based. Plaintiffs' motion to compel has been ripe since November 7, 2017.

Additionally, Plaintiffs have served a Rule 30(b)(6) Notice of Oral Deposition of Biomet, Inc. seeking testimony on 25 different topics. The parties dispute the relevance, proportionality, privileged character, and burden of having a corporate representative testify as to eight of those 25 topics. Biomet filed a motion for a protective order [DE 66], which has been ripe since December 5, 2017, seeking the Court's assistance in resolving the dispute over the eight 30(b)(6) topics. Plaintiffs filed a competing a motion to compel [DE 76] related to the noticed 30(b)(6) deposition, which became ripe on December 22, 2017.

With three discovery motions pending, Plaintiffs filed a motion for a hearing on those discovery motions. [DE 78]. Plaintiffs' motion became ripe on December 18, 2017, without any response from Defendants. While waiting for the Court to rule, Plaintiffs continued with their discovery efforts including depositions of current Zimmer Biomet employees Audrey Frush on December 20, 2017, and Tyler Mason, on January 16, 2018. Ms. Frush testified that she is the associate director of finance over commissions and territory support and has worked at Zimmer Biomet since July of 2016. [DE 91-1 at 4, 9:9, 18]. Mr. Mason testified that he reports to Ms. Frush and works in the commissions department with responsibility for calculating commissions for independent and legacy distributors. [DE 91-4 at 3–4, 12:23; 13:8–14:18].

During their depositions, Frush and Mason both testified that they were unaware of any litigation hold or other directive to their department to preserve documents or other evidence related to this case. Both also suggested that they have or could have relevant information that has not been collected. Based on this testimony, Plaintiffs sought assurance from Defendants

2

that a litigation hold or other written directive had been issued to all Zimmer Biomet employees to preserve relevant evidence. Plaintiffs also asked Defendants to identify measures taken to prevent spoliation of evidence in the event that a litigation hold had not been issued. Dissatisfied with Defendants' responses, Plaintiffs filed the instant emergency motion for preservation order [DE 91] on January 19, 2018. On the same day, Plaintiffs filed the instant motion for telephonic status conference [DE 93] seeking to address the parties' four other discovery motions in light of alleged preservation and spoliation issues raised through Frush's and Mason's testimony.

In light of the potential effect of the preservation of evidence issue on the pending discovery motions, the Court stayed resolution of all four discovery motions pending resolution of Plaintiffs' instant motions for preservation order and for telephonic status conference. [DE 94]. With the February 5, 2018, fact discovery deadline approaching before the instant motions were ripe, the parties filed a join motion to extend the discovery deadlines on February 5, 2018. [DE 96]. On February 7, 2018, the Court then learned of a new discovery dispute when Defendants filed their supplemental motion for a protective order seeking a Court order prohibiting Plaintiffs from pursuing non-party discovery directed to Zimmer Biomet's distributor, Shane Zeringue. [DE 97]. Defendants' Zeringue motion is not yet ripe. However, by February 9, 2018, Plaintiffs' instant motions for preservation order and telephonic status conference were ripe.

On this increasingly complex backdrop of discovery-related disputes, the Court now addresses Plaintiffs' instant motions for preservation order and telephonic status conference.

## II. PLAINTIFFS' MOTION FOR TELEPHONIC DISCOVERY STATUS CONFERENCE [DE 93]

Having reviewed the ripe discovery motions in light of Plaintiffs' instant emergency motion for preservation order, the Court concludes that no further discussion with the parties is needed in order to resolve the emergency motion. Therefore, the Court **DENIES** Plaintiffs' motion for a telephonic status conference. [DE 93].

## III. PLAINTIFFS' MOTION FOR PRESERVATION ORDER [DE 91]

A party retains a duty to preserve evidence once it knows or should know that litigation is imminent. *Trask-Morton v. Motel 6 Operating, L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Corporations are expected to discharge this duty by "implement[ing] a comprehensive written document preservation plan with specific criteria for finding and securing . . . relevant evidence for the litigation." *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *37 (N.D. Ill. Oct. 20, 2000); *but cf. Haraburda v. Arcelor Mittal USA, Inc.*, No. 2:11 CV 93, 2011 WL 2600756, at *1 (N.D. Ind. June 28, 2011) ("[A] large corporation only can discharge its duty by: '1) creating a 'comprehensive' document retention policy that will ensure that relevant documents are retained, . . . and 2) disseminating that policy to its employees." (quoting *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509 (N.D. Ill. Aug. 18, 2005)). However, courts assessing the propriety of sanctions for corporations' breaches of the duty to preserve evidence, including spoliation of evidence, do not reach any conclusion based simply on the existence of a retention policy. Instead, courts typically engage in a fact-intensive inquiry into the more general questions of whether documentary evidence was actually destroyed, whether the corporation's conduct constituted bad faith or wilfullness, and whether the corporation actively implemented measures to ensure preservation of relevant materials and disseminated such measures broadly. *See, e.g.*, *Larson,* 2005 WL 4652509; *Danis,* 2000 WL 1694325; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598 (D.N.J. 1997); *see also*

4

*Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 225 (7th Cir. 1992) (affirming sanctions against corporation for negligence in handling of relevant tangible items that resulted in the loss of evidence after fact-intensive analysis).

With that said, a preservation order is an extraordinary measure in the nature of an injunction. *See Chandler v. Buncich*, Civil No. 2:12 cv 175, 2012 WL 4343314, at *2 (N.D. Ind. Sept. 24, 2012). In determining whether a preservation order should issue, courts consider (1) whether the moving party can demonstrate that the non-moving party "will destroy necessary documentation without a preservation order;" (2) whether the moving party "will suffer irreparable harm if a preservation order is not entered;" and (3) "the burden imposed upon the parties by granting a preservation order." *Id.*, at *2 (quoting *In re African-Am. Slave Descendants' Litig.*, No. 1491, 02 C 7764, 2003 WL 24085346, at *2 (N.D. Ill. July 15, 2003)); *see also Haraburda*, 2011 WL 2600756, at *2. Preservation orders are not warranted when the movant has not shown that the non-movant failed to comply with its duty to preserve evidence or intends to breach its duty of preservation. *Gregg v. Local 305 IBEW*, No. 1:08-cv-160, 2008 WL 5171084, at *1 (N.D. Ind. Dec. 8, 2008).

Here, Plaintiffs seek a preservation order based solely on the technical fact that Zimmer Biomet did not issue a litigation hold, or in other words, Zimmer Biomet did not disseminate a company-wide directive to preserve evidence and avoid destruction of evidence—a fact that Zimmer Biomet does not directly dispute. However, Plaintiffs present no evidence to suggest that Zimmer Biomet has breached its duty to preserve evidence by destroying evidence or that it will destroy evidence in the future without a preservation order. And while the facts in other preservation order and spoliation cases may be distinguishable as Plaintiffs argue, the law remains clear that the party seeking a preservation order—in this case Plaintiffs—must demonstrate spoliation or the impending risk of spoliation in order to justify injunctive relief in

5

the form of a preservation order.  See *Chandler*, 2012 WL 4343314, at *2; *Haraburda*, 2011 WL 2600756, at *2; *Gregg*, 2008 WL 5171084, at *1.

Furthermore, Plaintiffs have not shown what irreparable harm they will suffer without a preservation order.  First, Zimmer Biomet has shown that it has informed key custodians of relevant information throughout this litigation.  Second, Zimmer Biomet reminded all previously identified custodians, its IT employees responsible for systems where relevant information could be found, and employees recently identified as having the potential to possess relevant information of their duty to preserve evidence in late January 2018.  Third, Frush's and Mason's own testimony shows that evidence has not been lost because it can still be produced—some immediately if required or some after retrieval from electronic archives.  Thus, the record has not established any irreparable harm that will occur without a preservation order.

Without evidence of imminent destruction of evidence or any irreparable harm to Plaintiffs, a preservation order is not warranted regardless of the limited burden Zimmer Biomet would face if a preservation order were issued.

## IV.   CONCLUSION

With insufficient proof of imminent destruction of relevant evidence or irreparable harm to Plaintiffs without a preservation order, the Court **DENIES** Plaintiffs' emergency motion for a preservation order.  [DE 91].  However, the Court once again **REMINDS** the parties, especially Defendants, of their duty to preserve evidence.  As stated in this Court's previous order [DE 94 at 2], any spoliation of evidence will be construed against Defendants and could result in sanctions.  See *Trask-Morton*, 534 F.3d at 681 (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001).  Therefore, the Court **RECOMMENDS** that Zimmer Biomet direct all its employees to preserve or otherwise prevent destruction of relevant evidence in all forms, electronic and non-electronic, and that Zimmer Biomet transmit this notification in both

6

electronic (e.g., email, etc.) and non-electronic formats to all employees with control over relevant materials or documents. As discussed above, the Court also **DENIES** Plaintiffs' motion for a telephonic status conference. [DE 93].

Lastly, having resolved Plaintiffs' motions for preservation order and telephonic status conference, the Court **LIFTS** the stay of the pending discovery disputes. [DE 94]. To resolve the remaining discovery motions, however, the Court requires a hearing as Plaintiffs requested in their motion dated December 1, 2017. Accordingly, the Court **GRANTS** Plaintiffs' motion for discovery hearing [DE 78] and **SETS** an in-court motion hearing on all pending discovery motions [DE 58, 66, 76, 96, 97], and any other outstanding discovery matters, for **March 6, 2018**, at **10:30 a.m. (E.S.T.)** at the Robert A. Grant Federal Building located at 204 South Main Street, South Bend, Indiana.

To ensure an efficient motion hearing, the Court **ORDERS** the parties to meet and confer by **February 27, 2018**, to narrow further the scope of the remaining discovery disputes. The Court also **ORDERS** the parties to file a brief joint status report, not to exceed 5 pages, by **March 2, 2018**, reporting any resolution of discovery issues and outlining the issues that still require the Court's attention at the motion hearing. Counsel for all parties must attend the motion hearing. No telephonic appearances will be allowed.

**SO ORDERED.**

Dated this 16th day of February 2018.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge