# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

CHARLES HESS, MARTY HIGGINS,    )   Civil Action No. 3:16-cv-00208
ROBERT "GLEN" MCCORMICK,      )
RONALD PAPA, FRANK SHERA, and  )
AL TORNQUIST,                   )
                                )   JURY TRIAL DEMANDED
                Plaintiffs,  )
                                )
    v.                          )
                                )
BIOMET, INC. and              )
ZIMMER BIOMET HOLDINGS, INC., )
                                )
               Defendants.  )

## PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS <u>AND ALTERNATIVE MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT .......................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 3

   A.  Plaintiffs' Agreements with Biomet .......................................................................... 3

   B.  Biomet's Breach.......................................................................................................... 7

   C.  The Court's Prior Order Dismissing Counts II and III .................................................. 7

   D.  Outstanding Deadlines and Events ............................................................................. 8

III.  MOTION FOR RECONSIDERATION ......................................................................... 8

   A.  Summary of the Argument.......................................................................................... 8

   B.  Argument and Authorities........................................................................................... 9

      1.  Newly discovered evidence concerning the parties' intent and scope of the Agreements confirms that Counts II and III should be reinstated............................................................. 11

      2.  Defendants' testimony confirms that the Court should reconsider its dismissal of Counts II and III.................................................................................................................... 12

      3.  Defendants' testimony and other evidence demonstrate that Defendants are attempting to use the Court's prior order unjustly to cover additional breaches of the Agreements and may even try to eliminate the Agreements entirely. ............................................................. 14

      4.  Defendants delayed and attempted to avoid providing this new evidence. .................. 16

      5.  Additionally, the Court should reinstate Counts II and III because *Mire* does not require a plaintiff to plead ambiguity to survive a motion to dismiss. ................................. 16

IV.  MOTION FOR LEAVE TO AMEND ............................................................................ 18

   A.  Legal Standard ........................................................................................................... 18

   B.  Argument and Authorities........................................................................................... 19

      1.  Justice requires allowing leave to amend to prevent Defendants from eliminating Plaintiffs' retirement commissions. ....................................................................................... 19

      2.  Rather than exhibit undue delay, bad faith, or dilatory motive, Plaintiffs seek leave to amend shortly after discovering key evidence supporting amendment. ................................ 19

      3.  Defendants cannot show any reason why amendment should be denied. .................... 21

      4.  Plaintiffs' amended complaint cures the deficiencies identified in the Court's Order on Defendants' Motion to Dismiss and so amendment is not futile.......................................... 22

      5.  Rule 16(b)(4)'s requirement of "good cause" does not apply to Plaintiffs' motion..... 24

V.  CONCLUSION.............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) ................................................................30

*AES Tech. Sys., Inc. v. Coherent Radiation*,
    583 F.2d 933 (7th Cir. 1978) ...............................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................29

*Biomet 3i, LLC v. Land*,
    No. 1:16-cv-125, 2017 U.S. Dist. LEXIS 17644, 2017 WL 510945 (N.D. Ind.
    Feb. 8, 2017) ..............................................................................28

*Campbell v. Ingersoll Milling Mach. Co.*,
    893 F.2d 925 (7th Cir. 1990) ...............................................................24

*Data Research & Handling, Inc. v. Vongphachanh*,
    278 F. Supp. 3d 1066, 1069 (N.D. Ind. 2017) ................................................24, 27

*Ellmann v. Amsted Rail Co.*,
    No. 2:17-cv-361, 2018 U.S. Dist. LEXIS 60258 (N.D. Ind. Apr. 9, 2018) ...........................25

*Fresh Cut, Inc. v. Fazli*,
    650 N.E.2d 1126 (Ind. 1995) ...............................................................24

*Harrison v. City of Fort Wayne*,
    No. 1:17-CV-419-PRC, 2018 U.S. Dist. LEXIS 79522 (N.D. Ind. May 11,
    2018) ....................................................................................30

*Hatton v. Shulkin*,
    No. 1:17-CV-488-TLS, 2018 U.S. Dist. LEXIS 78705 (N.D. Ind. May 10,
    2018) ....................................................................................28

*Hill-Harriss v. Gingiss Int'l, Inc.*,
    Case No. 91 C 6682, 1992 U.S. Dist. LEXIS 3548 (N.D. Ill. Mar. 19, 1992) ........................15

*Marshall v. Town of Merrillville*,
    262 F. Supp. 3d 733, 738 (N.D. Ind. 2017) ..................................................27

*Maxwell v. South Bend Work Release Ctr.*,
    No. 3:09-CV-008-PPS, 2010 U.S. Dist. LEXIS 83087, 2010 WL 3239319
    (N.D. Ind. Aug. 13, 2010) .................................................................26, 27

*PPM Fin., Inc. v. Norandal USA, Inc.*,
 392 F.3d 889 (7th Cir. 2004) ..........................................................................18, 19

*Phillips v. Lincoln Nat. Life Ins. Co.*,
 978 F.2d 302 (7th Cir. 1992) ................................................................................23

*Powers v. Centennial Communications Corp.*,
 108-CV-208-PPS, 2010 WL 746776 (N.D. Ind. Feb. 26, 2010) ...........................15

*Reardon v. Short-Elliott Hendrickson, Inc.*,
 No. 2:17-CV-154-JVB-PRC, 2018 U.S. Dist. LEXIS 56533 (N.D. Ind. Apr. 3,
 2018) .....................................................................................................................27

*Red Barn Motors, Inc. v. NextGear Capital, Inc.*,
 114CV01589TWPDKL, 2017 WL 1133707 (S.D. Ind. Mar. 27, 2017) ................23

*Rego-Fix AG v. Techniks, Inc.*,
 1:10-CV-1188-JMS-TAB, 2011 WL 471370 (S.D. Ind. Feb. 2, 2011)...................23

*Thomas & Betts Corp. v. Panduit Corp.*,
 No. 93C4017, 1999 U.S. Dist. LEXIS 1771, 1999 WL 92894 (N.D. Ill. Feb.
 17, 1999) ...............................................................................................................25

*United States v. Arnaout*,
 No. 14-CV-5617, 2016 U.S. Dist. LEXIS 158440 (N.D. Ill. Nov. 16, 2016) ........30

*Univ. of S. Indiana Found. v. Baker*,
 843 N.E.2d 528 (Ind. 2006) ................................................................................23

*Zimmer US Inc. v. Mire*,
 188 F. Supp. 3d 843 (N.D. Ind. 2016) ....................................................22, 23, 24

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs[1] are six retired distributors who formerly sold medical device products for Biomet, Inc. ("Biomet"); they brought suit because Biomet and Zimmer Biomet Holdings Inc. ("Zimmer Biomet") failed to pay them retirement commissions they are owed under the "Distributorship Agreements," drafted by Biomet in the early 1980s.

The Distributorship Agreements provided for a retirement income program, called the "Long Term Commission Program," through which Biomet agreed to pay Plaintiffs a lifetime commission on net sales made in their territories after their retirement. When the Plaintiffs retired, they signed "Termination Agreements" (collectively with the Distribution Agreements, "the Agreements").  The Termination Agreements recognized the survival of the Long Term Commission Program, and provided that Biomet's obligation to pay Plaintiffs their retirement commissions would be binding on Biomet and its "successors and assigns."[2]

More than ten years after the last Plaintiff retired, and after Biomet merged with its long-time competitor Zimmer Holdings, Inc. ("Zimmer"), Plaintiffs discovered that: (i) Biomet had breached the Agreements by paying retirement commissions on only a subset of its net sales in the relevant territories; (ii) Biomet had concealed its breaches by, among other things, issuing false and misleading commission statements; and (iii) Biomet's post-merger successor, Zimmer Biomet, continued to breach the agreements after the merger. Plaintiffs thus filed this lawsuit, seeking damages for Defendants' breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Indiana Crime Victims Relief Act ("CVRA").

---

[1] Charles Hess, Marty Higgins, Robert "Glen" McCormick, Ronald Papa, Frank Shera, and Al Tornquist.

[2] The Agreements are described at page 4 of the attached proposed amended complaint (Ex. A hereto), and attached as Exhibits 1-11 to that proposed amended complaint.

Plaintiffs pleaded their claims for breach of the Agreements and the implied covenant of good faith in Counts I-III of the original Complaint. Count I (the "Underpayment Claim") concerned Biomet's failure to pay retirement commissions on net sales of Biomet's products in the relevant territories, and Zimmer Biomet's ongoing failure to pay Plaintiffs' retirement commissions on the same sales.  Count II (the "Re-Branding Claim") concerned Defendants' failure to pay retirement commissions based on their post-merger spinning off, rebranding, substituting and otherwise discontinuing Biomet-branded products in favor of substantially similar product lines bearing a Zimmer or Zimmer Biomet brand.  Count III (the "Merger Claim") concerned Defendants' failure to pay retirement commissions on sales of all products sold in the relevant territories, regardless of branding or whether Biomet, Zimmer, or Zimmer Biomet originally developed the.[3]

Defendants moved to dismiss all claims in Plaintiffs' original complaint.  The Court granted and denied that motion, in part, dismissing Counts II and III (the Rebranding Claim and Merger Claim) in an order issued February 17, 2017.  DE 47.  The Court did not give Plaintiffs leave to amend the complaint.  Plaintiffs respectfully request that the Court reconsider its prior order dismissing Counts II and III of the original complaint, or alternatively, grant Plaintiffs leave to file an amended complaint, attached as Exhibit A hereto.[4]

Plaintiffs bring this motion for reconsideration (or, alternatively, leave to amend) to address misapprehensions of fact in the Court's prior order, and to raise newly discovered evidence that could not have been available to Plaintiffs or the Court at the time of that order. The newly discovered evidence demonstrates that:

---

[3] Count IV concerns Defendants' violation of the Indiana Crime Victims Relief Act ("CVRA").
[4] Exhibits to this motion are designated by letter, and exhibits to the proposed amended complaint are designated by number.

- The parties intended the Agreements to apply to ***all net sales*** made by Biomet or its successors or assigns (including Zimmer Biomet), regardless of the branding of the underlying product or Defendants' decisions to apportion sales among their subsidiaries.[5]

- Since the Court issued its opinion, Defendants have intentionally, unilaterally, and arbitrarily reduced the Plaintiffs' retirement commissions by excluding net sales based on the re-branding and re-categorization of products.  Defendants' misconduct, if left unchecked, threatens to eliminate Plaintiffs' retirement commissions.

This new evidence and the other factors discussed below demonstrate that the Court's order dismissing Counts II and III was based on incomplete information and a misapprehension of the Agreements.  Accordingly, Plaintiffs respectfully ask the Court to reconsider its opinion and order dismissing Counts II and III of the original complaint, or alternatively grant Plaintiffs leave to file the attached amended complaint.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiffs' Agreements with Biomet

Biomet was founded in 1977.  It was still a start-up in the early 1980s, when it made the promises reflected in the Distributorship Agreements. At the time, Biomet was trying to carve-out market share while competing against established medical device companies, including Zimmer. Many of those medical device companies relied on independent distributers to sell their products. The distributors, in turn, maintained personal and professional relationships with surgeons and other customers in their respective territories.

Biomet recognized that if it wanted to take market share from its larger, more established companies, it needed to persuade established distributors to join Biomet.  But Biomet had a problem: its competitors had more money, longer track records, and larger product portfolios.

---

[5] Alternatively, the Agreements are at least ambiguous as to their application to companies other than Biomet, Inc., and this new evidence further demonstrates that any such ambiguity should be resolved in Plaintiffs' favor.

As a result, Biomet's competitors could (and did) offer their distributors upfront compensation and stability that Biomet could not hope to match.   Biomet solved this problem through its Distributorship Agreements, which included generous commissions, a framework for growth, and back-end retirement incentives that it believed would lure top distributors away from its larger competitors.

One of the most important incentives that Biomet offered to potential distributors was the Long Term Commission Program set forth in Section 9 of the Distributorship Agreements. Specifically, Biomet established a "retirement income program" that would vest after a distributor completed ten years of serves and reached the age of fifty-five.  *See*, *e.g.*, Ex. 1 at § 9(d) (McCormick Distributorship Agreement).[6]  Biomet further stated that the retirement commissions paid under the Long Term Commission Program would be based on a percentage of the "net sales" in the retired distributor's former territory:

> d. The "long-term commission" (hereinafter referred to as the "commission") for the distributorship shall be calculated as follows:
>
> 1. One and one-quarter percent (1¼%) of the total "net sales" are to be paid to the distributor, up to a maximum income of fifty thousand dollars ($50,000) per year.
>
> 2. One-half (½) of one percent (1%) of "net sales", above the sales level from which the first fifty thousand dollars ($50,000) in income was calculated, are to be paid to the distributor, per year, with no maximum income level.

*Id.* at § 9(d).

---

[6] Section 9 of each Plaintiff's Distributorship Agreement is identical.  Each Plaintiff's Distributorship Agreement is attached to the proposed amended complaint at Ex. 1-5.  (While there are six plaintiffs, there are only five Distributorship Agreements because Plaintiffs Hess and Papa were partners and parties to the same Distributorship Agreement).

Biomet then defined the term "net sales" as gross sales, less certain deductions:

> **e. The term "net sales" shall be defined as gross sales made within the subject distributorship at the time this program is initiated and actually collected by Biomet less returns and allowances and less adjustments for nonpayment of invoices as provided herein.**

*Id*. at § 9(e).

In other words, the Distributorship Agreements define "net sales" broadly and without limitation. For example, when it drafted the Distributorship Agreements, Biomet did not restrict "net sales" to any particular product or product-group. If Biomet had intended to establish a product-specific limitation on retirement commissions, it knew how to do so. For example, Section 2 of the Distributorship Agreements establishes different commissions for active distributors, based on product categories. *See*, *e.g.*, Ex. 1. Biomet included no such distinctions in Section 9, nor did it exclude any product or product category from its definition of net sales. Similarly, Biomet did not distinguish net sales of products developed by Biomet as opposed to net sales of products added to Biomet's product line through the acquisition of products or companies. In fact, the Distributorship Agreements do not reference any distinction based on Biomet's corporate structure.

Biomet made a broad promise to pay future commissions on ***all*** net sales because: (i) it knew that its ability to grow would depend on the efforts of distributors like the Plaintiffs; (ii) it needed to entice the Plaintiffs to take an enormous risk by leaving their established positions to join Biomet; and (iii) it could not afford to offer up-front compensation that would entice established distributors to take that risk. As Biomet explained to the Plaintiffs when the Distributorship Agreements were signed, the parties' intent was that the Plaintiffs and Biomet

would grow together, and that the Plaintiffs would continue to enjoy the fruits of their labors even after retirement, as Biomet continued to grow and increase its sales.

Biomet succeeded in its efforts to recruit Plaintiffs, who signed the Distributorship Agreements on:

- September 1, 1980 (Plaintiff McCormick);

- February 26, 1982 (Plaintiffs Hess and Papa);

- March 19, 1982 (Plaintiff Tornquist);

- August 1, 1983 (Plaintiff Higgins); and

- June 1, 1983 (Plaintiff Shera).

In doing so, Plaintiffs took pay cuts of as much as 90%, further demonstrating the parties' intent to reward up-front risk with potential future reward—primarily in the form of retirement commissions.

Collectively, Plaintiffs provided more than 100 years of service to Biomet under the Distributorship Agreements. Their contributions were instrumental in Biomet's success in growing from an unknown start-up to a dominant player in the musculoskeletal healthcare industry. Plaintiffs then retired between 1996 and 2005.   At retirement, each signed a Termination Agreement that ended their distributorship and provided for the survival of the retirement commission program.[7] The Termination Agreements also expressly provided that they would be binding on Biomet's "successors and assigns." Ex. 6 at § 11.

---

[7] Each Plaintiff's Termination Agreement is attached to the proposed amended complaint at Ex. 6-11.  The Termination Agreements vary somewhat in format, *compare* Amended Complaint Ex. 6 (McCormick) and Ex. 8 (Higgins).

### B.   Biomet's breach

Following Plaintiffs' retirement, Biomet began surreptitiously underpaying their retirement commissions.  Rather than pay commissions on *all* net sales Biomet collected, as agreed, Biomet paid commissions on only a subset of net sales made by a single Biomet division—Biomet's Strategic Business Unit (SBU) No. 4 (a/k/a Biomet Orthopedics, LLC). Biomet omitted from the Long Term Commission Program nearly all net sales made by:

- Biomet's SBU No. 8 (a/k/a Biomet Sports Medicine, LLC);

- Biomet's SBU No. 18 (a/k/a Biomet Trauma, LLC);

- Biomet's SBU No. 24 (a/k/a Biomet Biologics, LLC).

*See* DE 59-2 at 5-6 (Biomet's Second Supplemental Response to Plaintiffs' Common Interrogatory No. 18).  Biomet also omitted net sales made by its subsidiaries EBI, LLC, Biomet 3i, LLC, and Biomet Microfixation, LLC (now Zimmer Biomet CMF and Thoracic, LLC).

As discussed in the original complaint, Biomet concealed these underpayments through, among other things, the issuance of false and misleading commission statements.  DE 1 at 11-15. Plaintiffs discovered these underpayments in 2016, more than a decade after the last Plaintiff retired, after Biomet merged with its long-time rival, Zimmer. Plaintiffs also learned that Zimmer Biomet continued to breach the Agreements after the merger. And so Plaintiffs sued.

### C.   The Court's Prior Order Dismissing Counts II and III

Plaintiffs filed their original Complaint on April 4, 2016, alleging six causes of action:

I.   Breach of Contract against Biomet and Zimmer Biomet ("Underpayment Claim")

II.   Breach of Contract against Biomet and Zimmer Biomet ("Re-Branding Claim")

III.   Breach of Contract against Zimmer Biomet ("Merger Claim")

IV.   Statutory Deception under Ind. Code §§ 34-24-3-1 & 35-43-5-3

V.      De Facto Merger/Mere Continuation/Alter Ego/Piercing the Corporate Veil

VI.     Request for Declaratory Judgment Pursuant to 28 U.S. Code § 2201

DE 1 at 32-41. Two months later the Defendants moved to dismiss each of these causes of action. The Court denied the motion as to Counts I and IV but granted it for the other Counts. DE 47. Plaintiffs seek partial reconsideration of the order dismissing Counts II and III, or alternatively leave to amend their complaint to reallege Counts II and III.

### D.      Outstanding Deadlines and Events

Fact discovery closed on May 1, 2018, although Defendants' depositions continued until May 31, 2018 and Defendants continued to produce documents until June 29, 2018. Additionally, two motions remain pending: Plaintiffs' motion to compel [DE 139] and for sanctions for Defendants failure to comply with the Court's prior discover order [DE 129].

Plaintiffs served their opening expert report on July 6, 2018. Defendants' rebuttal report is due on August 6, 2018. Mediation was commenced on July 3, 2018 and additional mediation is set for August 20, 2018.

The Court has not yet set a deadline for dispositive motions or a trial date.

## III.    MOTION FOR RECONSIDERATION

### A.      Summary of the Argument

Plaintiffs move the Court to reconsider its Order dismissing Counts II and III of the Complaint because of newly discovered evidence that represents a change in facts that could not have been available to Plaintiffs or the Court at the time of the original opinion. This new evidence demonstrates that the prior order dismissing Counts II and III relied on a misapprehension of the Agreements, to the extent it imposed limitations on Plaintiffs' right to receive retirement commissions on all net sales in their territories.

Specifically, Plaintiffs have discovered evidence demonstrating that the parties intended that the Agreements would cover all net sales in the Plaintiffs' territories, including net sales made by Biomet's successors and assigns (like Zimmer Biomet), regardless of branding used for the underlying products or Defendants decisions concerning their internal corporate organization. Plaintiffs also have discovered evidence showing that the Defendants are actively reducing the Plaintiffs' retirement commissions by excluding net sales covered by Section 9 of the Agreements based solely on the Defendants' arbitrary decision to re-brand the underlying products with a "Zimmer Biomet" label.  This new evidence demonstrates that reconsideration is warranted, and is necessary in the interest of justice, so that Defendants may not further evade their contractual obligations.

### B.        Argument and Authorities

Motions for reconsideration "are designed to correct manifest errors of law or fact or to present newly discovered evidence." *Hill-Harriss v. Gingiss Int'l, Inc.*, Case No. 91 C 6682, 1992 U.S. Dist. LEXIS 3548 at *6 (N.D. Ill. Mar. 19, 1992) (citing *Publishers Resource, Inc. v. Walker-Davis Publications*, 762 F.2d 557, 561 (7th Cir. 1985).  A motion to reconsider is appropriate where: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issues to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Powers v. Centennial Communications Corp.*, 108-CV-208-PPS, 2010 WL 746776 (N.D. Ind. Feb. 26, 2010) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990)). While they are not favored, a motion for reconsideration is warranted when the

Court has made an error in apprehension of a contract underlying a claim. *Hill-Harriss*, Case No. 91 C 6682, 1992 U.S. Dist. LEXIS 3548 at *7-16.

Here, the Court misapprehended the Agreements and original complaint when it held that "the Complaint does not identify any contractual obligation that Defendants allegedly breached" by engaging in the Conduct described in Counts II and III of the original complaint—*i.e.* re-branding products to exclude net sales from the Plaintiffs retirement commissions (Count II), or excluding net sales of products originally developed by Zimmer before the merger or by Zimmer Biomet after the merger (Count III). DE 47 at 12-13.

In fact, the plain language of the Agreements expressly provides that the Defendants must pay the Plaintiffs' retirement Commissions on "net sales" in the relevant territories, without limitation. The Agreements further define "net sales" as that term is generally used (*i.e.* gross sales less certain deductions)—without reference to any specific product, company, or branding. Plaintiffs cited to this requirement in their original complaint. DE 1 at 10.[8]

The parties intent to define the retirement commission program broadly and without such limitations has been confirmed throughout this case, including by the plain language of the Agreements, the unrebutted testimony of the Plaintiffs, the admissions of the Defendants, and newly discovered evidence establishing that Biomet knew how to draft narrower language when it so chose, but instead made broad promises in order to retain top distributors.

---

[8] That misapprehension may have been based on the use of the term "Biomet products" as short-hand referring to the net sales made in the Plaintiffs' territories. Accordingly, in addition and as an alternative to their motion for partial reconsideration, Plaintiffs request leave to file an amended complaint. *See* Section IV, below; Ex. A (Proposed Amended Complaint).

**1.   Newly discovered evidence concerning the parties' intent and scope of the Agreements confirms that Counts II and III should be reinstated.**

Plaintiffs recently discovered a series of contracts and agreements between Biomet and a former distributor, Tim Weis, that provide additional context justifying the reinstatement of Counts II and III.

Weis and Biomet executed a distributorship agreement on January 15, 1980, that

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████

██████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████

█  ███████████████████████████████████
████████████████████████████████████████████

█  █████████████████████████████████
████████████████████

█  ████████████████████████████████████
██████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

████████████████████████████████

This evidence casts new light on the Distributorship Agreements that the Court did not have when it concluded, on the pleadings alone, that the Long Term Commission Program should be limited to just "Biomet products," and that Plaintiffs could not state a claim that Defendants breached the agreements by re-branding or substituting products to avoid paying retirement commissions on all net sales.  Based on this new evidence, the Court should reconsider its original order that would effectively rewrite the Agreements as if Plaintiffs ████ ████ agreed to narrow their retirement commissions.  Since they did not, Plaintiffs ask the Court to reconsider that order, because "courts are not in the business of rewriting contracts to appease a disgruntled party unhappy with the bargain it struck."  *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 893 (7th Cir. 2004).

**2. Defendants' testimony confirms that the Court should reconsider its dismissal of Counts II and III.**

In its recent depositions, Defendants offered testimony further demonstrating that the Court should reconsider its dismissal of Counts II and III, or alternatively allow Plaintiffs leave to amend.

Defendants' corporate representative, Ashley Portz,[9] ███████████████████



Defendants' candor demonstrates why the Court should reconsider the dismissal of

Counts II and III. Def███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████ But "courts are not in the business of rewriting contracts to appease a disgruntled

party unhappy with the bargain it struck." *PPM Fin., Inc.* 392 F.3d at 893; *see also AES Tech.*

*Sys., Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir. 1978) ("The purpose of the courts

---

[9] A former Biomet employee who had worked in Biomet's commissions department.

in contractual disputes is not to rewrite contracts by ignoring parties' intent; rather, it is to

interpret the existing contract as fairly as possible when all events did not occur as planned.").

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████ The Court should reconsider its order and prevent the Defendants from

further re-writing their agreements.

> **3. Defendants' testimony and other evidence demonstrate that Defendants are attempting to use the Court's prior order unjustly to cover additional breaches of the Agreements and may even try to eliminate the Agreements entirely.**

During the deposition of the Defendants' corporate representative, Plaintiffs also

discovered that Defendants are refusing to pay retirement commission on net sales of bone

cement (a product sold with certain orthopedic implants) despite the fact that:

- the net sales are occurring in Plaintiffs' territories;

-  the underlying product was developed by Biomet before the merger; and

- Defendants admit that bone cement is a product category for which they must pay Plaintiffs' retirement commissions.[10]

Defendants' refusal to pay retirement commission on this legacy-Biomet bone cement,

violates the Agreements, even under Count I of the original complaint.  Defendants have argued

that that they can excuse this reduction of Plaintiffs' retirement commissions based on their

---

[10] *See generally* Ex.  E at 84:20-88:5 (Deposition of Shane Zeringue) (establishing that Defendants are transitioning to a Zimmer Biomet branded bone cement); Ex. F at 102:12-22:12 (Deposition of Daniel Hann) (establishing that the Zimmer Biomet branded bone cement was developed by Biomet before the merger); Ex. G (exemplary Zimmer Biomet commission statement, showing Plaintiffs' right to receive retirement commissions on bone cement sold in their territories).

unilateral decision to brand the bone cement as a "Zimmer-Biomet" product.  In doing so, Defendants are misusing the Court's prior Order in an attempt to avoid liability for new and ongoing violations of the Agreements.  The Court should reconsider its dismissal of Counts II and III to prevent such misuse.

Defendants' conduct with respect to its Biomet-developed bone cement represents a disturbing misapplication of the Agreements; one that, if left unchecked, could result in the complete elimination of the Long Term Commission Program.  This is because Biomet has effectively ceased to exist as anything other than a corporate shell.  According to Defendants' witnesses, Biomet has no employees and no independent research and development.[11] Moreover, Zimmer Biomet's conduct with respect to bone cement demonstrates that Defendants intend to use a "Zimmer Biomet" brand for so-called "new" products, even if the product in question was developed by Biomet before the merger.  Over time these products will replace the legacy-Biomet products on which the Defendants admit they owe retirement commissions, gradually eroding the Long Term Commission Program until it no longer exists.  This was not the intent of the parties when they signed contracts providing Plaintiffs with lifetime retirement commissions, and it was not the intent of the parties when they agreed that those contracts would be binding on Biomet's "successors and assigns."[12]  The Court should reinstate Counts II and III to prevent Defendants from using its prior order to excuse this ongoing breach.

---

[11] Ex. H (Deposition of Audrey Frush) at 74:8-19; Ex. I (Deposition of Tyler Mason) at 17:11-13); Ex. F (Deposition of Dan Hann) at 145:18-146:7.

[12] *See e.g.* Ex. 1 at § 9 (providing for a lifetime retirement commissions on net sales in the relevant territories); Ex. 6 at § 2 (recognizing the survival of the retirement commissions) and § 11 (binding Biomet and its "successors and assigns").

**4.   Defendants delayed and attempted to avoid providing this new evidence.**

This newly discovered evidence was unavailable to Plaintiffs and the Court at the time of its prior Order.  Plaintiffs served requests for production covering the Weis Agreement and Weis Amendment on December 6, 2016.  DE 59-1 at Common RFP 43.  Defendants refused to cooperate, alleging that these documents, and others like them, were "wholly irrelevant to Plaintiffs' claims." DE 59-3 at 17-18. After motions practice, the Court compelled Defendants to "produce the distributorship agreements for the 24 [non-Plaintiff distributors] by **March 30, 2018**."  DE 113 at 10 (emphasis in original).  Despite the Court-ordered deadline, Defendants continued to withhold the Weis Amendment until Plaintiffs threatened a motion for sanctions, ultimately producing it on June 4, 2018.

Defendants also delayed Plaintiffs' ability to take the Defendants' depositions under Rule 30(b)(6).  Plaintiffs originally noticed that deposition on October 2, 2017, but Defendants refused to produce a corporate representative on any topic—even topics to which Defendants did not object—until the Court resolved Defendants' objections to Plaintiffs' deposition notice.  While Defendants eventually abandoned this position (on the eve of a hearing), they delayed the deposition of their corporate representatives for more than six months.

**5.   Additionally, the Court should reinstate Counts II and III because *Mire* does not require a plaintiff to plead ambiguity to survive a motion to dismiss.**

The Court dismissed Count III, in part, because the Court held that the original complaint "does not allege any ambiguous language in the Agreements" that could support a claim that the Agreements covered the net sales of Zimmer Biomet or Zimmer-branded products.  DE 47 at 14-15.  As discussed above, the Agreements cover net sales, without reference to products, branding, or Defendants' corporate structure.  But, at minimum, the Agreements are ambiguous

and the application of those agreements is a fact-intensive inquiry that cannot be resolved under

Rule 12(b)(6). *Zimmer US Inc. v. Mire*, 188 F. Supp. 3d 843 (N.D. Ind. 2016).

In the Court's prior Order, the Court distinguished *Mire*, stating that because Plaintiffs

had not pleaded ambiguity, no such fact-intensive inquiry was necessary in this case.  But the

complaint that survived dismissal in *Mire* did not allege that the contract at issue was ambiguous.

Nevertheless the court in *Mire* found that the plaintiff properly stated a claim for relief because

the complaint was "sufficient to state a cognizable claim for breach of contract under a Rule

12(b)(6) standard of review." *Mire*, 188 F.Supp.3d at 850.

The result in *Mire* is unsurprising because, unlike some other states, Indiana courts do not

require a plaintiff to allege ambiguity at the pleading stage.  Rather, cases like *Mire* show that a

court applying Indiana law should deny a motion to dismiss when there is a potential ambiguous

interpretation of the contract under which the defendant would be liable.  *Id.*; *see also*, *e.g.*,

*Rego-Fix AG v. Techniks, Inc.*, 1:10-CV-1188-JMS-TAB, 2011 WL 471370, at *3 (S.D. Ind.

Feb. 2, 2011) (denying a motion to dismiss, despite no allegation of ambiguity in the pleadings,

and holding that "[w]hile a court may take into consideration the plain language in a contract

when reviewing a motion to dismiss a claim based on that contract, any ambiguity that might

exist in the contract pushes the issue to the fact-finder");  *Red Barn Motors, Inc. v. NextGear

Capital, Inc.*, 114CV01589TWPDKL, 2017 WL 1133707, at *14 (S.D. Ind. Mar. 27, 2017)

(denying motion to dismiss where ambiguity was raised for the first time in Plaintiffs' response).

As discussed above, Plaintiffs request that the Court reconsider its dismissal of Counts II

and III because the plain language of the Agreements does not include the limitations imposed

by the Court.  Additionally and in the alternative, the Court should reconsider its dismissal of

Counts II and III because the Distributorship Agreements are at least ambiguous as to the parties'

17

intent concerning the scope of Plaintiffs' Long Term Commission Program.  *See Phillips v. Lincoln Nat. Life Ins. Co*., 978 F.2d 302, 313 (7th Cir. 1992) (a contract is ambiguous if reasonable persons could differ over the meaning of its terms).  The Plaintiffs need not plead ambiguity to survive a motion to dismiss.  *See Mire*, 188 F. Supp. 3d at 850; *Rego-Fix AG*, 2011 WL 471370, at *3; *Red Barn Motors,* 2017 WL 1133707 at *14.  And, in any case, Plaintiffs' proposed amended complaint pleads ambiguity.  Ex. A at 39 and 41.

Moreover, under Indiana law "it is proper to admit extrinsic evidence to resolve any ambiguity."  *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006).  Here, the Weis Amendment and other evidence demonstrate that such ambiguity should be resolved in the Plaintiffs' favor.  Such ambiguity should also be construed against Biomet, because it drafted the Distributorship Agreements.  *See Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1132 (Ind. 1995). And, at the pleading stage, all inferences are drawn in favor of the Plaintiffs.  *See Mire*, 188 F. Supp. 3d at 851.  The Court should thus reconsider its prior order or, at minimum, grant Plaintiffs leave to amend.

## IV.      MOTION FOR LEAVE TO AMEND

### A.      <u>Legal Standard</u>

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).  "Pursuant to the Rule's express language, leave to amend a complaint is generally liberally granted."  *Data Research & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1069 (N.D. Ind. 2017).  Ultimately, the decision whether to grant or deny a motion to amend lies within the sound discretion of the Court.  *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

18

B.     **Argument and Authorities**

Justice requires leave to amend where, as here, Plaintiffs seek leave to amend not because of undue delay, bad faith, or dilatory motive, but rather to account for newly discovered evidence.  The proposed amendment here will have no impact on the timing of the case, because the Court has yet to set dates for dispositive motions or trial, and it will not prejudice Defendants.

**1.  Justice requires allowing leave to amend to prevent Defendants from eliminating Plaintiffs' retirement commissions.**

Plaintiffs, through their Amended Complaint, seek to receive the full benefit of the Distributorship Agreements they bargained for when Biomet was in its infancy.  Justice requires allowing leave for this amendment because Plaintiffs could not have obtained much of the evidence supporting amendment until recently—mainly because of Defendants' efforts to delay discovery.  *See Ellmann v. Amsted Rail Co.*, No. 2:17-cv-361, 2018 U.S. Dist. LEXIS 60258, at *4-5 (N.D. Ind. Apr. 9, 2018) (holding that justice would require that the moving party could amend "once discovery revealed facts that supported it, and the [moving party] acted promptly after obtaining the relevant discovery.").

**2.  Rather than exhibit undue delay, bad faith, or dilatory motive, Plaintiffs seek leave to amend shortly after discovering key evidence supporting amendment.**

Plaintiffs' diligence in seeking leave to amend after receiving the Weis Amendment and Defendants' deposition testimony also weighs against a finding of undue delay, bad faith, or dilatory motive. And as described above, any delay in seeking leave to amend results from Defendants conduct in stalling discovery.

Here, amendment will not result in undue delay.  "Generally, undue delay occurs when a motion to amend would 'transform' or prolong the litigation unnecessarily." *Thomas & Betts*

19

*Corp. v. Panduit Corp.*, No. 93C4017, 1999 U.S. Dist. LEXIS 1771, at *6, 1999 WL 92894, at

*2 (N.D. Ill. Feb. 17, 1999) (citing *Eckstein v. Balcor Film Inv'rs*, 58 F.3d 1162, 1170 (7th Cir.

1995)). Courts consider these factors when determining whether undue delay has occurred:

- the similarity of the factual basis for the claims in the original complaint to the proposed new claims;

- the movant's explanation for waiting to raise the new claims;

- whether the movant is attempting to introduce a new theory of the case; and

- whether granting the motion to amend will require new or duplicated discovery efforts.

*Maxwell v. South Bend Work Release Ctr.*, No. 3:09-CV-008-PPS, 2010 U.S. Dist. LEXIS

83087, at *7, 2010 WL 3239319, at *2 (N.D. Ind. Aug. 13, 2010).

The first factor weighs heavily in favor of granting leave to amend—the factual basis for

the claims in the original complaint is identical to the proposed new claims.  The proposed

Amended Complaint seeks only to replead Counts II and III from the original Complaint, while

clarifying the language in the Agreements that Defendants have breached and incorporating

newly-discovered evidence establishing that breach.

The second and third factors also support allowing the amendment.  Plaintiffs discovered

new evidence supporting amendment between April and June 2018, then promptly filed this

motion.  Plaintiffs are also not attempting to introduce a new theory of the case.  Rather,

Plaintiffs seek to clarify the theories pleaded in Plaintiffs' original complaint.

The fourth factor also supports amendment, because it will result in minimal additional

discovery.  Discovery concerning the Defendants' liability is complete (pending the Court's

consideration of the outstanding motions to compel [DE 139] and for sanctions [DE 129]).  The

only new information Defendants would be required to produce after amendment would be

complete sales records for the Plaintiffs' territories.  Defendants' witnesses have testified that

Defendants store this information in a readily accessible format. *See*, *e.g.*, Ex. J, May 31, 2018

Deposition of Biomet's Corporate Representative, Ashley Portz at 525:21-526:4; Ex. D at 23:17-

26:7.

### 3. Defendants cannot show any reason why amendment should be denied.

Even if Defendants could show that Plaintiffs delayed seeking leave to amend (they

cannot), delay is "not a sufficient basis for denying leave to amend." *Maxwell v. S. Bend Work*

*Release Ctr.*, 2010 WL 3239319, at *2 (N.D. Ind. Aug. 13, 2010) (citing *Dubicz v.*

*Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004).  In fact, in the last year this Court

has granted two motions for leave to amend where there was a more than two-year gap between

the filing of the original complaint and the motion for leave to amend. *See Data Research &*

*Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066 (N.D. Ind. 2017) (granting leave to

amend where there was three years between the filing of the original complaint and the motion

for leave to amend); *Marshall v. Town of Merrillville*, 262 F. Supp. 3d 733, 738 (N.D. Ind. 2017)

(granting leave to amend where there was three years between the filing of the original complaint

and the motion for leave to amend). "Rather, to support denial, such delay must be couple with

another reason—most commonly unfair prejudice, but also bad faith, a dilatory motive, or when

the proposed amendment would be futile." *Maxwell v. S. Bend Work Release Ctr.*, 2010 WL

3239319, at *2 (N.D. Ind. Aug. 13, 2010).

### a) Amendment will not prejudice Defendants.

While Defendants will need to defend themselves against the allegations in the Amended

Complaint, that fact alone does not warrant a finding of undue prejudice. "[B]eing required to

defend against new allegations made in pleadings is not the sort of prejudice that is undue in the

context of amending pleadings." *Reardon v. Short-Elliott Hendrickson, Inc.*, No. 2:17-CV-154-

JVB-PRC, 2018 U.S. Dist. LEXIS 56533, at *4 (N.D. Ind. Apr. 3, 2018) (citing *Biomet 3i, LLC*

21

*v. Land*, No. 1:16-cv-125, 2017 U.S. Dist. LEXIS 17644, 2017 WL 510945, at *4 (N.D. Ind. Feb. 8, 2017)). If it were, amended pleadings would rarely be permissible. *Id*.

In this case, the impact of amending the pleadings will be minimal.  While Plaintiffs request a brief re-opening of discovery, very little work remains to be done.  The claims in the proposed amended complaint arise out of the same factual basis as the claims in the original complaint, and discovery concerning the underlying Agreements is complete.  Some limited discovery will be required concerning Defendants' sales, but that information is readily accessible.  In such circumstances, granting leave to amend is appropriate.  *See Biomet 3i, LLC v. Land*, No. 1:16-cv-00125-TLS-SLC, 2017 U.S. Dist. LEXIS 17644 at *7-8 (N.D. Ind. Feb. 8, 2017).

The Court has yet to set a trial date or a date by which Defendants must file dispositive motions.  Accordingly, the Court may grant leave to amend and a brief re-opening of discovery without impacting the Defendants' ability to respond to the amended complaint.

### 4.  Plaintiffs' amended complaint cures the deficiencies identified in the Court's Order on Defendants' Motion to Dismiss and so amendment is not futile.

Amendment is not futile because the amended complaint cures the deficiencies the Court identified in its prior order (DE 47); identifies new evidence demonstrating that the parties intended the Agreements to cover all "net sales"; and, alternatively, identifies ambiguous language in the Agreements that should be interpreted in favor of the Plaintiffs.  *See* Section III(B)(5), above.

The standard for futility is the same standard of legal sufficiency that applies under Rule 12(b)(6). *Hatton v. Shulkin*, No. 1:17-CV-488-TLS, 2018 U.S. Dist. LEXIS 78705, at *6 (N.D. Ind. May 10, 2018) (citing *Townsel v. DISH Network LLC*, 668 F.3d 967, 969 (7th Cir. 2012)). To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plaintiffs' amended complaint meets these thresholds.

The Court dismissed Count II of the original complaint because Plaintiffs "did not identify any contractual obligation that Defendants allegedly breached" based on their spinning off and re-branding of former Biomet products. DE 37 at 12-13. The amended complaint clarifies these allegations and alleges that Defendants breached § 9 of the Distributorship Agreements. Ex. A at 38-40.

The Court dismissed Count III because it determined that the Agreements covered only sales of "Biomet products" and because "the Complaint [did] not allege any ambiguous language in the Agreements." DE 47 at 14-15. For the reasons stated above, Plaintiffs contend that the Court misinterpreted the reference to "Biomet products" in the original complaint and imposed a limitation not found in the Agreements. *See* Section III(B), above. In any case, the amended complaint cures any deficiency by expressly tying Plaintiffs' allegations to the  provisions of the Agreements providing that (i) Biomet agreed to pay retirement commissions on all "net sales" (without limitation); and (ii) the Agreements expressly bind Biomet's "successors and assigns". Ex. 1 at § 9; Ex. 6 at § 11. Alternatively, Plaintiffs' amended complaint alleges that the Agreements are ambiguous as to their application to sales of Zimmer Biomet and Zimmer-branded products post-merger. Ex. A at 41.

23

### 5. Rule 16(b)(4)'s requirement of "good cause" does not apply to Plaintiffs' motion.

In some cases, courts in this district have required a party moving for leave to amend to show good cause when its motion was filed after the deadline for amending pleadings. *See Harrison v. City of Fort Wayne*, No. 1:17-CV-419-PRC, 2018 U.S. Dist. LEXIS 79522, at *3 (N.D. Ind. May 11, 2018). These decisions are based on Seventh Circuit opinions holding that "the district court is 'entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied' when a party moves to amend a pleading after the deadline set in the scheduling order." *Adams v. Indianapolis*, 742 F.3d 720, 733-34 (7th Cir. 2014) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011).

This requirement does not apply here. The last scheduling order to mention the amendment of pleadings is DE 46 (entered February 7, 2017).[13] That order states that amendments without leave must be made by February 28, 2017, and "[t]hereafter, any amendments to the pleadings must be by motion and leave of court." DE 46 at 2. Because the Plaintiffs seek leave of court to amend their pleadings, they have complied with DE 46, and Rule 16(b)(4)'s heightened pleading requirements do not apply. *See, e.g.*, *United States v. Arnaout*, No. 14-CV-5617, 2016 U.S. Dist. LEXIS 158440, at *6 (N.D. Ill. Nov. 16, 2016) (declining to apply the two-step approach of *Adams* and *Alioto* where the scheduling "set no deadline for amending pleadings.").

Even if Rule 16(b)(4)'s good-cause requirement applied in this case, Plaintiffs have met that standard based for the reasons articulated Sections IV(B)(1)-(4), above.

---

[13] The parties have since amended the Scheduling Order, but to address only the deadlines for fact and expert discovery.

## V.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court either reconsider its Order on Defendants' Motion to Dismiss, or, in the alternative, grant Plaintiffs leave to file their amended complaint.

Dated July 31, 2018                          Respectfully submitted,

                                             /s/ Travis DeArman

                                             Gary Cruciani (*pro hac vice*)
                                             Travis E. DeArman (*pro hac vice*)
                                             Jonathan Powers (*pro hac vice*)
                                             McKool Smith, P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, TX 75201
                                             (214) 978-4000
                                             gcruciani@McKoolSmith.com
                                             tdearman@McKoolSmith.com
                                             jpowers@McKoolSmith.com

                                             Damon R. Leichty (21708-53)
                                             Eileen S. Pruitt (28015-71)
                                             Barnes & Thornburg LLP
                                             700 1st Source Bank Center
                                             100 North Michigan
                                             South Bend, IN 46601
                                             Telephone:  574-233-1171

                                             *Attorneys for Plaintiffs*
                                             *Charles Hess, Marty Higgins,*
                                             *Robert "Glen" McCormick,*
                                             *Ronald Papa, Frank Shera, and*
                                             *Al Tornquist*

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and accurate copy of the foregoing was served through email/ECF system and/or by the United States Mail, first class postage prepaid, addressed to the following parties, this 31st day of July 2018:

Joshua B. Fleming
Daniel M. Janssen
Elizabeth Trachtmann
Lindsey T. Millman
Quarles & Brady LLP
135 N. Pennsylvania St., Suite 2400
Indianapolis, IN 46204

                                             /s/ Jonathan Powers
                                             Jonathan Powers

26